## MURPHY *vs.* THE NEW YORK CENTRAL RAILROAD COMPANY.

Although the existence of defective ties or rails at one place on a railroad is not conclusive evidence that they are defective at another, yet it is evidence competent to be submitted to a jury, and from which, in connection with other proof, they may infer the presence of the same defects at the place where an injury occurred, or the cause of an accident commenced to operate.

When cars run off the track, and the condition of the ties at the point of divergence cannot be ascertained, it is competent to show their condition near to it, thus laying the foundation for the inference that if the ties were damaged and decayed in the immediate vicinity of the accident, they may have been so at the place where the cars passed from the track.

Railroad engineers or constructors are not the only persons competent to give an opinion in answer to the question how the running off of cars on the inside of a curve, instead of the outside, can be accounted for. *Prima facie,* that question can be answered by any person acquainted with the elementary principles of mechanism, and claiming only to be an expert in that branch of science.

In an action to recover damages for a personal injury caused by the negligence of the defendant, the court permitted the plaintiff to prove, by a physician, that some weeks after the injury, and after the commencement of the action, the plaintiff complained of pain in the back, and soreness in his side. *Held* that this was not erroneous; but that the length of time that had elapsed between the accident and the declaration was a proper subject of consideration for the jury.

MOTION for a new trial, on exceptions ordered to be heard at a General Term, in the first instance, and appeal from an order made at Special Term, denying a motion to set aside a verdict, as contrary to evidence, which was made on the judge's minutes.

*Cox & Avery*, for the appellant.

*Wm. Porter*, for the respondent.

*By the Court*, MULLIN, J. This action was brought to recover for damages sustained by the plaintiff by reason of the train of cars on which he was a passenger being thrown from the track of the defendant's road, near the city of Auburn, in September, 1865. The cause was tried at the Cayuga circuit in October, 1866, and there was a verdict for the plaintiff, for $1,800 damages. The defendant moved for a new trial, at the circuit, on the judge's minutes, and the motion was denied. It is not claimed that the verdict can be disturbed unless the court erred in one or other of the rulings to which exceptions were taken on the trial.

The plaintiff was permitted to prove that rotten ties were found on the track within a few rods of the place where the cars ran from the track. To the admission of this evidence the defendant's counsel duly excepted.

The cars ran from the track on or near the eastern end of a curve in the track about one mile and a quarter east of Auburn. The precise point where the cars left the track was not known, and consequently the cause of the accident could not be clearly ascertained. The plaintiff alleged that it was caused either by the rottenness of the ties, or by the improper elevation of the rail on the outer or convex side of the curve. As the precise point of departure could not be ascertained, and as the defendant's workmen proceeded to repair the track very soon after the accident, by removing the old ties and rails, and putting in new ones, it was impossible for the plaintiff to show the condition of the track at the precise place where the accident occurred. If the ties were proved to be rotten, an adequate cause for the accident would be established; and as their condition at the point of divergence could not be ascertained, it was

competent to show their condition near to it, thus laying the foundation for the inference that if the ties were damaged to such a degree in the immediate vicinity of the accident, they may have been so at the place where the cars passed from the track. If such evidence is not competent it would be impossible to charge a railroad company with negligence in the construction or care of the track of its road. The duty of a company, after an accident by which its track is injured, is to put it in a proper state of repair immediately. This is required as well by its own interest, as by the duty it owes to those traveling over its road. In repairing, defective ties and rails will be removed, and thus the persons injured will be deprived of all means of proving that the company was negligent. I do not desire to be understood as holding that the existence of defective ties or rails at one place on a road is conclusive evidence that they are defective at another. All I intend to say is, that it is evidence competent to be submitted to the jury, and from which, in connection with other proof, they may infer the presence of the same defects at the place where the injury occurred or the cause of the accident commenced to operate. I think the evidence was competent, and was properly admitted.

The plaintiff called and examined one Casey as a witness, who testified that he resided in Auburn; that his business of late years was manufacturing generally; was formerly a builder. He was at the place of the accident the morning after it occurred. He saw nothing to examine, except a lot of rotten wood which had been ties. Ties first decay under the rail; saw spikes sticking up, which indicated to him that the ties were rotten in the middle. He could push his cane into one-fourth or one-third of the ties, the length of the ferule. The ties were apparently sound, except where the rail lay upon them, and there it first decays. This was the condition of the road for half a mile. The accident occurred at the east

end of a sharp curve. He noticed the track, the outer rail or the rail on the convex side of the curve, as was usually the case, was thrown up too abruptly. It seemed remarkable that with that short curve the cars should be thrown off on the concave or inner side of the curve, when it would naturally tend the other way, coming at that rate of speed, as the left hand side was raised so abruptly. Had been an architect and builder of houses, &c., for the past twenty years of his life, and for the last twenty years had been engaged in manufacturing, in the Auburn prison. It had been a point all through his life to have more or less to do with timber, to study it, and its causes of decay. He pretended to be an expert in all things relating to mechanics or natural philosophy. The witness was then asked how he accounted for the cars running off on the inside of the curve instead of the outside. The defendant's counsel objected to the evidence, on the ground that the witness was not an expert in that branch of mechanics which relates to the building of railroads. The objection was overruled, and the defendant's counsel excepted. It will be borne in mind that before this question was put, the witness testified, without objection, to the condition of the ties, and the undue elevation of the outside rail, or the rail on the convex side of the curve. He is then called on for his opinion as to the cause of the cars running off on the concave side. It was not objected that it was a question to which opinions were not competent. On the contrary the objection assumes their competency, but insists that a person acquainted with railroad mechanics could alone speak. Is it true that railroad engineers or constructors, only, could give an opinion in answer to the question? It seems to me not. It called for the application of the principles of that branch of natural philosophy, or of practical mechanics, which apply to bodies moving on curved lines. This motion

is not peculiar to railroads, although it is found more frequently applied and upon a larger scale upon railroads than in other structures.

It is a law of bodies in motion that their tendency is to move on in straight lines; hence when they reach a curve this tendency would have the effect to throw them off on the convex side. To counteract this tendency the rail on that side is elevated and the centre of gravity removed from the centre toward the concave side. When the moving body first strikes the elevated rail, the weight of the engine or car, or the centre of gravity, is moved to the other side with greater or less force and consequent rapidity, depending on the speed of the train; and if the rail on the concave side is not properly secured, it will be forced from its place, and the car or engine losing the support of the rail will rush from the track. I repeat, the question could be answered by any person acquainted with the elementary principles of mechanism, and the witness swore he was an expert in that branch of knowledge. If it was true that a knowledge of the construction of railroads, or of the movement of trains over them, was essential to enable the witness to answer the question, it should have been made in some way to appear; as *prima facie* an acquaintance with the elementary principles of mechanism was sufficient. The learned judge who tried the cause was doubtless of this opinion, as the witness only claimed to be an expert in that branch of science, and did not claim to have any knowledge of constructing or operating railroads.

For these reasons, I think the evidence was properly received.

The court permitted the plaintiff's counsel to prove by a physician that some weeks after the injury, and after the commencement of the action, the plaintiff complained of pain in the back and soreness in his side.

The defendant's counsel objected to the evidence, and the objection was overruled, and he excepted.

The statements made by a patient to his physician, as to his condition, after an injury caused by the wrongful act or neglect of another, are received from the necessity of the case, and furnish one of the few exceptions to the general and almost universal rule, that a party to an action cannot give his own statements in evidence in his own behalf. Without a description by the patient of his condition and symptoms, it would be impossible for a physician to administer treatment; and it would be equally impossible for a court to ascertain, in many cases, whether there were actual injuries, and whether they were permanent or temporary merely. It would be impossible to adequately protect the rights of a plaintiff and exclude such declarations. The defendant's counsel does not object to the declarations as being incompetent on any other ground than that they were made after suit brought. The learned counsel has not given any reason why those made after suit should be excluded, and I can perceive no reason for their exclusion that would not apply to those made before suit. In *Werely* v. *Persons*, (28 *N. Y.* 344,) it was held competent to show the plaintiff's statements as to his condition for a period of two months after the injury. It is possible that statements thus made are false, but they are no more likely to be so when made after suit brought than before. And as the plaintiff may recover for all damages naturally resulting from an injury, those occurring after suit as well as before, it becomes indispensable to admit the party's declarations, so as to enable the jury to ascertain whether the injuries are permanent or merely temporary. The length of time that elapsed between the accident and the declaration was a proper subject for the consideration of the jury. The court could not say that they were incompetent because of mere lapse of time.

The case was properly disposed of at the circuit, and the motion for a new trial should be denial, and judgment ordered for the plaintiff on the verdict.

[ONONDAGA GENERAL TERM, October 1, 1867. *Morgan, Bacon, Foster* and *Mullin,* Justices.]