The Louisville and Nashville Railroad Company v. Schmidt.

———————◆———————

No. 9306.

THE LOUISVILLE AND NASHVILLE RAILROAD COMPANY v. SCHMIDT.

NEGLIGENCE.—*Railroad.*—*Complaint.*—A complaint which avers that the servants and employees of a railroad company, while the plaintiff's horse was upon a highway near a railroad crossing, stopped the engine at the crossing and negligently caused the steam to escape, making a great noise, after having been requested not to do so, whereby the horse became frightened, reared up and fell backwards, killing himself, shows that the injury was the "natural and proximate" result of the negligence.

SAME.—*Contributory Negligence.*—A party, who is himself guilty of contributory negligence, can not recover for injury to himself or property.

SAME.—*Railroad Crossing Street.*—*Killing Horse.*—A party who drives a horse toward a railroad crossing upon or near which an engine is standing, and, notwithstanding the fact that the horse is frightened at the engine, thereafter leads him toward the crossing, until a narrower point in the street is reached, where it is difficult to turn him, and the horse becomes so frightened as to be unmanageable, and then rears and falls backward and kills himself, is guilty of contributory negligence, and can not maintain an action against the railroad company for such injury.

From the Vanderburgh Circuit Court.

*S. B. Vance,* for appellant.
*C. F. Gould,* for appellee.

BEST, C.—This action originated before a justice of the peace, and upon an appeal to the superior court the appellee· filed an amended complaint in these words:

The Louisville and Nashville Railroad Company *v.* Schmidt.

"The plaintiff complains of the defendant, and says, that defendant was, upon the 29th day of July, 1880, a corporation owning a railway, running into the city of Evansville, Pigeon township, Vanderburgh county, State of Indiana; that, upon said last mentioned date, said defendant, by its servants, drove and conducted a locomotive engine upon said railroad in said township, county and State; that the horse of this plaintiff was, by the agent of this plaintiff, being driven to said railroad, at said time, upon a public road, for the purpose of lawfully crossing the said railroad, when the defendant, in the course of its business and by its servants, so negligently drove and conducted the said engine, and allowed steam to escape from unusual parts thereof, and made a great noise, causing said horse to become frightened, although often requested not so to do; that the servants of said defendant stopped said engine close to said horse, by which said horse was frightened, and then and there, whilst said horse was in great danger of causing great injury to itself and other property and persons, by reason of said fright, caused as aforesaid, said defendant, by its servants, in the due course of its business, though often requested not so to do, negligently and carelessly caused said steam to escape from said engine, while said engine stood in close proximity to said horse, and made a loud noise, which said servants of said defendant might well have avoided, whereby said horse reared up and fell, breaking his neck and dying on the spot.

"Plaintiff further says, that said death of said horse, and the fright which caused the same, were not caused in any manner by the fault or negligence of this plaintiff or his agents, but that every care was taken by the said plaintiff to prevent said injury, and the same was caused by the negligent and careless acts of the servants of the defendants, as aforesaid, whilst they were in the employ of the said defendant, and in the due course of their employment. Plaintiff further says that said horse was reasonably worth $100. * * * Wherefore," etc.

A demurrer for want of facts was overruled to the complaint; the issues were tried by a jury, and a verdict returned for the appellee. A motion for a new trial was overruled, and final judgment entered upon the verdict.

The errors assigned are that the court erred in overruling the demurrer to the complaint, and in overruling the motion for a new trial.

The only objection urged to the complaint is, that the injury alleged is not the "natural and proximate" result of the negligence averred. We think otherwise. *The Indianapolis, etc., R. W. Co.* v. *McBrown,* 46 Ind. 229.

The complaint is not bad for the reason named, and, therefore, the first assignment can not be sustained.

The reasons embraced in the motion for a new trial are, that the verdict is not sustained by sufficient evidence, and is contrary to law.

An examination of the evidence leads us to the conclusion that this motion should have been sustained.

Seventh Avenue, in the city of Evansville, is a street thirty feet in width, which crosses several tracks of the appellant's road, near or within its yards. The employees of appellant were making up a train of cars, and had backed across Seventh Avenue, stopping the engine near the crossing. While it stood in this position, the servant of the appellee approached, upon Seventh Avenue, the crossing, driving a butcher's wagon, to which the horse was hitched, and while the engine remained stationary the injury occurred. It is thus described by the witnesses. Jacob Schneider, the boy who was driving the horse, testified as follows:

"I was in the employment of the plaintiff in the month of July last; on some day, in the latter part of said month, was driving his horse to a butcher's wagon, along Seventh Avenue, in the city of Evansville, going to Reitz's saw-mill for a load of sawdust. I was driving him towards the railroad track, for the purpose of crossing it. There was an engine standing on the railroad track, about half way across the street on which I

was driving; as I approached the track, the horse became frightened so that I could not manage him; there is a deep gully on each side of Seventh Avenue, at the place the railroad crosses it, which was filled with water at the time of the accident; he was frightened at the engine, from the cylinder of which steam was escaping; there was a man on the engine; my father ran up and caught the horse, and hallooed to the man on the engine, 'For God's sake, stop that steam!' he did not stop the steam, but it continued to escape; the man did nothing but stand and look at us and laugh; the horse reared up two or three times, fell back and broke his neck; I had been driving the horse five or six months; I believe the horse could have been safely led across the railroad, if the steam had been stopped."

On cross-examination, the said witness testified as follows: "The engine was on the track in Seventh Avenue where it crosses the railroad track, and was about half way across it; I do not know whether the valves were open, but steam was escaping from the cylinder; the horse became frightened at the engine when he was thirty yards from it, so that I could not manage him; I could not turn him around, because he was so scared, and the street was so narrow; I was afraid the horse might fall into the deep gully at the sides of the street; the street was thirty feet wide, and the horse was hitched to a butcher's wagon, and deep holes, with water in them, were on each side of the street; he was so frightened that I could not take him out of the wagon; I drove him on, nearer to the engine, because I could not hold him; the horse first became alarmed about the middle of Schaum's malt house; another boy, named Charley Kruger, was with me in the wagon; I did not blindfold him then; I had a handkerchief in the hand with which I was leading him, but did not put it over his eyes; where the horse was killed there was a deep hole on each side of the street; my father unhitched the horse from the wagon and tried to lead him across the railroad track."

The next witness was Charley Kruger, who testified as follows:

"I was with Jacob Schneider when the horse of Mr. Schmidt was killed near Schaum's malt house, in July last. I had been riding in the wagon with him, until the horse got scared, when we got out of the wagon. The horse got scared at the engine. It was standing on the corner of Seventh Avenue and the railroad street, and the steam was coming out of it. Mr. Schneider took hold of the horse and told the man on the engine, 'For God's sake, stop that steam!' Mr. Schneider took the horse out of the wagon, and he reared up and fell back, and broke his neck. The steam kept coming out of the engine all the time."

On cross-examination, he testified as follows:

"When the horse first got scared he was pretty near at the middle of Schaum's malt house. I saw the engine then. The boy had to get out and lead and hold him."

The next witness was Valentine Schneider, who testified as follows:

"I am the father of the boy, Jacob Schneider, who has testified for the plaintiff in this case. I knew the horse of Anton C. Schmidt, that was killed last July, on Seventh Avenue, in the city of Evansville, and near the railroad track. I had left my son about fifteen minutes before the accident occurred, and had gone into a saloon. When I came out of the saloon I saw the horse; he was near the railroad track, and was very much frightened. An engine was standing on the railroad track, near the crossing, and steam was escaping from it. The boy was unable to manage the horse. I caught hold of the horse and hallooed to the man on the engine, 'For God's sake, stop that steam!' He did not stop the escape of the steam. He stood still, and looked at us. The horse reared up, pitched me around, and threw me down, and fell back on the wheel of the wagon, and broke his neck. If the steam had not been escaping from the engine, I think he could have been led across the railroad track."

On cross-examination, he said:

" I did not try to lead the horse away from the engine, because he was too scared; he did not give me time. As soon as I got him loose from the wagon, he began to rear up, and threw me around, and then fell back and broke his neck. He was about as far from the railroad track as from here to the bench in front of that man yonder, about thirty feet. He was not much further than that from the engine."

Wm. Jonini testified as follows:

" I saw the horse of the plaintiff, when he was killed; was about seventy-five yards from him; saw steam escaping from the cylinders of the engine."

The foregoing was all the testimony of the plaintiff relative to the horse's death.

·The appellant produced a couple of witnesses who testified as to the place where the horse became frightened, and its distance from the crossing. Lewis Geiger testified:

" I was at work in Schaum's malt house on the day the plaintiff's horse was killed. I saw the horse in front of the malt house; he was in charge of two boys, of whom Charley Kruger was one. I did not know the other boy. The horse seemed to be frightened at the railroad, or something in that direction. The boys got out of the wagon, * * * * and started, leading him towards the railroad. When in front of the malt house he was one hundred and fifty or one hundred and ninety feet from the railroad."

Henry Bruner testified:

"I saw him in charge of Jacob Schneider and Charlie Kruger, when in front of the malt house. He was frightened at the railroad, and the boys * * * * led him towards the road."

The engineer testified, that they were making up a train of cars; that he was looking back for a signal from the brakeman to go forward, and that when he received it he turned, reversed his engine, and at that instant saw the horse and man, and heard the man call to him, as he understood him,

" to stop that machine ; " that he did not start the engine un-
til after the horse had killed himself, and that no more steam
was escaping than was usual.

Conceding that the engine was standing so near the cross-
ing as to amount to a practical obstruction of the street, the
question remains whether the servant of the appellee was not
guilty of negligence in attempting to take the horse across
the track in front of the engine after the horse had become
frightened.   The undisputed facts are, that when the horse
was driven to the malt house, distant from the crossing at
least one hundred and fifty feet, he became so frightened at
the engine in front of him that the boy who was driving him
got out of the wagon and attempted to lead him toward the
crossing.   He succeeded in leading him from one-half to two-
thirds of the distance, when he became so frightened as to be
unmanageable, and then the boy's father caught the horse,
unloosed him from the wagon, and immediately thereafter
the horse reared, fell back and killed himself.   At this time
he was near the engine, and the parties having the horse in
charge were attempting to take him across the track.   This
they suppose could have been successfully done had the steam
not been allowed to escape.   These acts clearly constitute
contributory negligence upon the part of the appellee.   The
boy in charge of the horse was bound to use ordinary care
and diligence in taking him across the track, so as to avoid
injury.   Ordinary care is that degree of care that a person
of ordinary prudence will use, so as to avoid injury under
the particular circumstances of the case.   It is well settled
that a recovery can not be sustained when the injury could
have been avoided by the exercise of ordinary care and pru-
dence.   *The Toledo, etc., R. W. Co.* v. *Goddard*, 25 Ind. 185,
and authorities cited.

When the horse at the malt house first became frightened,
it was the duty of the boy in charge of him to have stopped
and waited until the engine had moved away, so that the horse
could have been safely driven across the track, or to have

turned and avoided the danger to which the engine exposed him. At this time the boy could have controlled the horse, and could easily have avoided the danger; but instead of doing this, with the engine in full view, and with full notice that the horse was then frightened by it, he led the horse toward it until he reached a part of the street where it was difficult, if not impossible, to turn, and until the horse, in his fright, reared, fell, and killed himself. These acts upon the part of the appellee's servant amount to an assumption of the risk in attempting to lead the horse over the crossing, and the appellee·must himself bear the loss. *Bruker* v. *Town of Covington,* 69 Ind. 33, and authorities cited.

. This conclusion renders it unnecessary to determine whether the evidence shows negligence upon the part of appellant.

For these reasons, we think the court erred in refusing to grant a new trial, and that the judgment should be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment be and it is hereby in all things reversed, at the appellee's costs.