Filed March 6, 1888.

---

No. 12,560.

## THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY v. WOOD.

RAILROAD.— *Negligence.— Conductor and Passenger.— Tort.*—A conductor who pulls a passenger from a moving train is guilty of a tort, while engaged in the line of his duty, and the railroad company, for which he is acting, is liable therefor, although such tort may be a negligent and not a wilful one.

The Louisville, New Albany and Chicago Railway Company v. Wood.

EVIDENCE.—*Statements to Attending Physician.*—In an action for personal injuries, it is competent for the attending physician to testify as to what the injured party informed him as to the pains suffered, and their locality.

SAME.—*Inspection of Injured Member by Jury.*—In such an action the injured member may be inspected by the jury.

SAME.—*Non-Professional Witness.—Opinion of.*—Where, in such a case, a non-professional witness is testifying to the condition and appearance of the injured party before and after the injury, an expression of opinion by the witness that the party had grown worse is competent.

SAME.—*Medical Witness.—Opinion as to Cause of Symptoms.*—Where a medical witness, who has seen and examined the injured party, has testified to his condition, it is not error to permit him to state what, in his opinion, produced the symptoms he had described.

SAME.—*Practice.—Hypothetical Question.—What Facts May be Assumed.*—A party who propounds a hypothetical question may assume such facts within the range of the evidence as he believes the evidence tends to establish.

SAME.—*Inadmissibility of Proof of "Common Understanding."*—A question to a medical witness, on direct examination, as to what is commonly understood by the medical profession on a certain subject, is not competent.

SAME.—*Cross-Examination of Witness.—Scope of.*—Where the direct examination of a witness opens on a general subject, the cross-examination may go into any and all phases of that subject.

SAME.—*Medical Expert.—Proof of Probable Results of Injury.*—Medical witnesses may testify as to the probable results that would follow from an injury described by other witnesses who have testified on the trial.

NEGLIGENCE.— *Liability of Wrong-Doer for Proximate Results of Injury.*— Where a wrongful act is done which results in the injury of another, the wrong-doer is liable for the proximate results of that injury, although he may not have foreseen or anticipated the consequences which resulted from the act.

SAME.—*Instructions.*—For a series of instructions held to correctly state the law on the subject of carrier and passenger, etc., see opinion.

From the Washington Circuit Court.

*G. W. Easley, G. W. Friedley, G. R. Eldridge, S. O. Bayless, W. H. Russell, D. M. Alspaugh* and *J. C. Lawler,* for appellant.

*J. A. Zaring, S. B. Voyles* and *H. Morris,* for appellee.

ELLIOTT, J.—The material facts stated in the appellee's
VOL. 113.—35

complaint are these : On the 21st day of October, 1882, the appellee purchased a ticket and entered one of the appellant's passenger trains. The ticket entitled her to a passage from Salem to Campbellsburg. At the place of her destination the appellants failed and refused to stop the train a sufficient length of time to enable her to leave it, but, having stopped the train, the conductor who had charge thereof, before the plaintiff had sufficient time to get safely off the cars and while the plaintiff was standing on the platform of the cars, which point she had reached while the train was not in motion, signalled the train, so soon as she, the plaintiff, had reached the platform, to move on ; the engineer did obey the signal and did start the train in motion before the plaintiff could get off and while she was standing on the platform. After the engineer had started the train, the conductor wilfully, carelessly and improperly seized her, and, without any fault or negligence on her part whatever, wrenched her off the steps and jerked her to the ground, causing her to sustain very great bodily injury.

We can not perceive the slightest ground for the contention of counsel that the complaint is bad. The carrier clearly violated a legal duty in not stopping the train a sufficient length of time to permit the appellee to alight in safety. *Terre Haute, etc.. R. R. Co.* v. *Buck,* 96 Ind. 346 (49 Am. R. 168) ; *Cincinnati, etc., R. R. Co.* v. *Carper,* 112 Ind. 26.

The conductor, in jerking the appellee from the train, was guilty of a tort while engaged in the line of his duty, and the appellant is unquestionably liable for such a tort. This liability exists even though the tort was a negligent and not a wilful one. *Terre Haute, etc., R. R. Co.* v. *Jackson,* 81 Ind. 19 ; *Louisville, etc., R. R. Co.* v. *Kelly,* 92 Ind. 371 ; *Wabash R. W. Co.* v. *Savage,* 110 Ind. 156 ; *Cincinnati, etc., R. R. Co.* v. *Carper, supra,* and cases cited.

Counsel say : " There is no averment that the plaintiff was invited or directed to alight at the point she did, so as to

bring the case within *Columbus, etc., R. W. Co.* v. *Farrell*, 31 Ind. 408."

The halting of the train at the station to which the appellant undertook to carry the appellee was an implied invitation to alight, so that, even if the complaint proceeded on the theory that it is assumed by counsel it does, it would be good. The theory, however, on which it does proceed is, that the conductor in charge of the train heedlessly and wrongfully pulled the appellee from it while it was in motion. The cases we have cited show, beyond all controversy, that the conductor, in the management of the train and in caring for passengers in entering and alighting from the train, is the representative of the company in whose service he is engaged, so that the complaint is good on the theory on which it does proceed.

Undoubtedly, there must be, as counsel assert, a connection between the negligence and the injury. *Pennsylvania Co.* v. *Hensil,* 70 Ind. 569 (36 Am. R. 188); *Pittsburgh, etc., R. W. Co.* v. *Conn,* 104 Ind. 64. But we think it too clear to require discussion that the complaint does show that the tort of the conductor caused the appellee's injury.

It is said by counsel: "While the carrier is responsible for negligence, wilfully or carelessly inflicted upon passengers by servants employed in the performance of duties within the general scope of their employment, the question in such cases is whether the servant, when he inflicted the injury, was acting within the line of his employment, not whether the particular act was authorized or not. *Louisville, etc., R. R. Co.* v. *Kelly,* 92 Ind. 371." We fully assent to the rule as counsel state it, but we can not agree that they give it a correct application. We have already shown that the conductor's act was within the scope of his employment, so that the rule which counsel invoke is decisively against them. It is also said by counsel that "The case of *Terre Haute, etc., R. R. Co.* v. *Jackson,* 81 Ind. 19, in its dictum goes too far;" but counsel are in error, for that case states

the rule as counsel concede it, and is abundantly supported by authority. *Wabash R. W. Co.* v. *Savage, supra.*

It is further contended that, as the complaint does not directly allege that the conductor was acting within the scope of his employment, the complaint is bad, and we are referred to the case of *Helfrich* v. *Williams*, 84 Ind. 553. The plain answer to this is, that the facts stated do show that the conductor was acting within the line of his employment when he pulled the passenger from the train, instead of affording her an opportunity to safely alight, as it was his legal duty to do.

The morning after the injury occurred, Dr. Rife was called to give appellee medical attention, and he testified that she told him " what her trouble was." This testimony was competent. In order to enable a physician to intelligently prescribe or advise, he must be informed of the pains suffered by his patient, and where they are located. To this effect the authorities uniformly go. *Carthage T. P. Co.* v. *Andrews*, 102 Ind. 138, and cases cited; *Cleveland, etc., R. R. Co.* v. *Newell*, 104 Ind. 264 (54 Am. R. 312), and cases cited; *Louisville, etc., R. W. Co.* v. *Falvey*, 104 Ind. 409.

All that the appellee testified that she told her physician was what her pains were, and in what part of her body they were located. Counsel are mistaken in asserting that Dr. Rife was not called as a physician, for he was called in that capacity and in that capacity prescribed for the appellee.

The appellee, while on the witness-stand giving testimony, was allowed to remove a shawl from her feet and exhibit them to the jury. There was no error in permitting this to be done. The text-writers and the decisions all agree that such an exhibition is not improper.

Dr. Wharton says: " Injury to the person may also be proved by inspection. Thus in an action to recover damages for an injury to a limb, the injured limb may be exhibited on trial." Whart. Crim. Ev., section 312.

Mr. Best, speaking of this species of evidence, denominates it " real evidence," and says : " Immediate real evidence is

where the thing which is the source of the evidence is present to the senses of the tribunal. This is of all proof the most satisfactory and convincing." 2 Best Ev. (Morgan's ed.), section 197.

The old writers often speak of such evidence, and in 1 Hale's Pleas of the Crown, 635, a notable instance is given of its force. Mr. Taylor collects a number of cases, affirms that the species of evidence here under discussion is always competent, and assigns to it the highest rank. 1 Taylor Ev., 513.

An American author, discussing the subject, says: "The injured member may be exhibited to the jury." Abbott Trial Ev., 599.

In a recent article by Judge Thompson, entitled "Trial by Inspection," many cases are collected, all holding that exhibitions of persons or things are proper. 25 Central L. J. 3.

Henry Wade Rogers, in an article entitled "Profert of the Person," discusses the subject, and collects many authorities, all agreeing that exhibitions of injuries are not improper. 15 Central L. J. 2. Cases on the general subject are also collected in *Thurman* v. *Bertram*, 20 Alb. L. J. 151.

In *Osborne* v. *City of Detroit*, U. S. Cir. Ct., 36 Alb. L. J. 343, it was held not error for a surgeon to thrust a pin into the side of a person alleged to be paralyzed, in the presence of the jury.

Without further comment, we refer to other cases which are directly in point: *Schroeder* v. *Chicago, etc., R. R. Co.*, 47 Iowa, 375; *Mulhado* v. *Brooklyn, etc., R. R. Co.*, 30 N. Y. 370 (33 Am. R. 540, and note); *State* v. *Wieners*, 66 Mo. 13. The principle has been asserted in many cases by this court. *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Story* v. *State*, 99 Ind. 413; *McDonel* v. *State*, 90 Ind. 320; *Short* v. *State*, 63 Ind. 376; *Beavers* v. *State*, 58 Ind. 530.

Counsel for the appellant, although they argue the question at length, cite only a single case, that of *Ihinger* v. *State*, 53 Ind. 251; but, as shown in *Indiana Car Co.* v.

*Parker, supra,* that case is not in point, for the reason that the only question decided arose upon an instruction. More nearly in point are the cases of *Robinius* v. *State,* 63 Ind. 235, *Swigart* v. *State,* 64 Ind. 598, and *Bird* v. *State,* 104 Ind. 384; but these cases form an exception to the general rule. In these cases the question was whether the personal appearance of a party could be considered by the jury in determining a person's age, and it was held that it could not. These cases have been vigorously assailed by many writers and courts, but we do not feel it necessary to depart from them, for we think they are distinguishable from our other cases as well as from the present case. As said of *Robinius* v. *State, supra,* in one of our former cases : "There is a distinction between such a case and the present, for where age is the material question, as it was in the case cited, the decision upon inspection really determines the whole case; while, in such a case as the present, the inspection of the wounded member simply illustrates and makes clear the testimony of the party and assists in determining the character of one of the facts in the case." *Indiana Car Co.* v. *Parker, supra.* To what was there said we may add, that here the exhibition of the injured member affects only the extent and character of the injury, which is only a single fact in the case, while in a case where the decision depends upon the age of the party, the opinion of the jury upon inspection conclusively settles the whole question, thus effectually depriving the party aggrieved of the benefit of an appeal. But in a case like this, the inspection of the injured part settles nothing more than the extent and character of the injury, if, indeed, it can be justly said to settle so much. At most, then, an inspection of an injured limb does no more than supply evidence upon a single fact, and it does not deprive the party of any substantial right on appeal, for it is conclusively settled that the appellate court will not weigh the evidence in any case where there is a conflict. It is obvious, therefore, that the case un-

The Louisville, New Albany and Chicago Railway Company v. Wood.

der discussion is very different from one in which age decisively determines the whole controversy.

It is evident that the learned counsel have expended much labor on this point, and, as they cite only the single case we have referred to, we may well infer that there are no others that lend any support to their position. We have ourselves given the subject very careful study, and our search has not revealed a solitary authority that opposes, directly or indirectly, the doctrine that it is competent to exhibit an injured limb to the jury. It certainly has always been the practice, as Mr. Chitty says, to exhibit models, articles of apparel or other chattels, and the case before us is the same in principle.

Miss Drummond testified that she was acquainted with the appellee, and described her personal appearance and physical condition previous to her injury. She also described the appellee's condition immediately after the accident and for a few days afterwards. After she had testified to these facts, she stated that she saw the appellee a month afterwards; that she, the appellee, had grown worse, and the witness described her condition as it then existed. If this case was one requiring a non-expert witness to state facts before expressing an opinion, we should have no hesitation in holding that the facts stated were sufficient to entitle the witness to express an opinion. But we do not understand that, upon such a question, a knowledge of facts is required to be stated in advance, or that the witness must be an expert. *Carthage T. P. Co.* v. *Andrews, supra.*

In *Hardy* v. *Merrill*, 56 N. H. 227, a very learned opinion was delivered in which very many decisions of the English and American courts were cited, and it was said, among other things, that "all concede the admissibility of the opinions of non-professional men upon a great variety of unscientific questions arising every day, and in every judicial inquiry. These are questions of identity, hand-writing, quantity, value, weight, measure, time, distance, velocity, form, size, age, strength, heat, cold, sickness, and health."

Dr. Wharton lays down a like rule and cites many authorities. 1 Wharton Ev., section 513. Other text-writers assert the same rule. Rogers Ex. Test., section 3; Lawson Ex. & Op. Ev. 470.

Counsel cite upon this point two cases. The first of these, *Com.* v. *Sturtivant*, 117 Mass. 122 (19 Am. Rep. 401), bears upon the question here under discussion, inasmuch as it decides that, (1) where the trial court adjudges that a witness is qualified to give an opinion, the appellate court can not review the decision; (2) that it is competent for a witness to give an opinion as to the health of a party; and (3) that it is not improper to call upon him to describe specifically the matter of which he speaks. In discussing the second of these propositions, the court, after stating the general rule that non-expert witnesses may express opinions in many cases, says: "It is competent for a witness to testify to the condition of health of a person, and that he is ill or disabled, or has a fever, or is destitute and in need of relief. *Parker* v. *Boston, etc., Steamboat Co.*, 109 Mass. 449; *Wilkinson* v. *Mosely*, 30 Ala. 562; *Barker* v. *Coleman*, 35 Ala. 221; *Autauga Co.* v. *Davis*, 32 Ala. 703."

As we read the case cited, it lends counsel no support whatever, but, on the contrary, is strongly against them. The court fully adopts the view expressed in *Steamboat Clipper* v. *Logan*, 18 Ohio, 378, that "It is not true as a legal position that no one but an expert can give an opinion to a jury." The second of the cases cited, *Reid* v. *Piedmont, etc., Life Insurance Co.*, 58 Mo. 425, is not well considered, as there is neither argument nor authority adduced. The witness in that case was asked as to whether the assured was in good health, and the court simply held that the question was incompetent, saying that "This question involved a mere conclusion and was objectionable." This is not the law, for every answer of a witness to such a question is necessarily a conclusion, and yet, as we have seen, it is well settled that

such a conclusion is competent. *Carthage T. P. Co.* v. *Andrews, supra.*

It is said, however, that the evidence should have been excluded because it permitted the witness to institute a comparison. There is no strength in this position. The testimony of the witness was directed to the condition of the appellee a month subsequent to her injury, and, after fully describing it, the witness said that it was worse than it was immediately after the accident.

In determining whether an injured person is growing better or worse, a non-expert witness must necessarily express an opinion, for, as the cases we have cited hold, the fact is one that can not be described by any other than an expert witness. Any witness of ordinary intelligence may be able to state that a sick or wounded person has grown worse or has improved without being able to give an accurate description of his condition, and this brings the case fully within the authorities. Undoubtedly, the facts on which the conclusion rests may be asked for on cross-examination, but the opinion is not incompetent merely because the witness can not adequately state the grounds on which it rests, although the failure to do so may, perhaps, weaken its probative force. But in this case the facts were as fully stated as any non-expert witness could possibly state them, so that, even if we were wrong in relying on the authorities we have cited, the appellant can not prevail, for the case is fully within the rule that where a non-expert witness states facts on which his opinion is based, the opinion is competent.

One of the medical witnesses who had seen and examined the appellee, and who had described her condition, was asked: "What, in your opinion as a medical expert, produced the symptoms you saw in her case?" There was no error in permitting this question to be asked and answered. *Louisville, etc., R. W. Co.* v. *Falvey,* 104 Ind. 409, and authorities cited; *Wabash R. W. Co.* v. *Savage, supra.*

If it were conceded that *VanDeusen* v. *Newcomer,* 40 Mich.

90, does decide what the appellant claims, and that it is sound, it would not avail the appellant, for here the medical expert did detail the facts within his knowledge to the jury. *Haggerty* v. *Brooklyn, etc., R. R. Co.*, 61 N. Y. 624, cited by appellant, simply decides that it was not competent to ask a non-expert witness "if the conductor did all in his power to avoid an accident."

A long hypothetical question was asked Dr. C. W. Murphy, and it is objected that it did not embrace all the evidence in the case. It is settled beyond controversy, that a party who propounds an hypothetical question may assume such facts within the range of the evidence as he believes the evidence tends to establish. *Louisville, etc., R. W. Co.* v. *Falvey, supra*, and authorities cited; *Goodwin* v. *State*, 96 Ind. 550, and authorities cited; *Elliott* v. *Russell*, 92 Ind. 526; *Guetig* v. *State*, 66 Ind. 94.

Mr. Rogers, in discussing this question, says : " If framed on the assumption of certain facts, counsel may assume the facts in accordance with his theory of them, it not being essential that he should state the facts as they actually exist." Rogers Expert Testimony, 39.

Another author says: " It is the privilege of the counsel in such cases to assume, within the limits of the evidence, any state of facts which he claims the evidence justifies, and have the opinion of experts upon the facts assumed." Lawson Expert and Opinion Ev. 153.

Counsel say: " The hypothesis should include the substance of all the evidence." In support of this proposition they refer us to *Com.* v. *Rogers*, 7 Met. 500, and *People* v. *Lake*, 12 N. Y. 358. Neither of these cases supports the proposition. The New York cases are fully and strongly against the doctrine of counsel. *Stearns* v. *Field*, 90 N. Y. 640; *Mercer* v. *Vose*, 67 N. Y. 56; *Harnett* v. *Garvey*, 66 N. Y. 641.

It is evident that the proposition can not be sound. If it be regarded as correct, then in every case the court must de-

termine what facts were or were not proved, and this would be an usurpation of the functions of the jury. If, as happens in most cases, the evidence is conflicting, then, if counsel are right, the assumption must, of necessity, contain contradictory statements. These reasons are in themselves enough to condemn the proposition of counsel, even in the absence of authority, but all the authorities are against them, so that the overthrow of their position is decisive and complete.

Dr. Neal, a medical expert, was permitted to testify that the irritation of the mouth of the urethra produced the contracted condition of the appellee's legs. What we have said in considering the testimony of another medical witness disposes of this point.

It is, however, said that the question which drew out the testimony was leading. If it were granted that the question was leading, it would not entitle the appellant to a reversal. It is generally held, that permitting a leading question to be asked will not be sufficient cause for reversal, although some of the cases hold that, where there is a clear abuse of discretion, the rule is otherwise. We need not decide which line of cases "hath the better reason;" it is enough for us to decide, as we do, that there was no such abuse of discretion as would require a reversal, even if we accepted the latter line of cases as correctly expressing the rule.

Counsel say : " The twelfth and thirteenth causes assigned in the motion for a new trial, were intended to bring before the jury the accepted views of medical writers and practitioners as to what was commonly understood by and known to the medical profession, that the condition of the lower limbs of the plaintiff is frequently produced by uterine troubles. If this were the fact, the defendant had a clear right to have it in proof before the jury. If it were an unusual fact, it would have made against the defendant, but if it were usual and commonly understood by medical authors and practitioners, it would have much weight in

favor of the defendant. There can be no just reason assigned for excluding evidence as to what is commonly understood and known by the medical profession in that regard."

We have copied all that is said by counsel upon this subject, and we are by no means convinced that the trial court erred. If the question had arisen on cross-examination, a different rule would, perhaps, obtain, but the witness was introduced by the appellant and his opinion elicited. The qualification of the witness was thus asserted, and it was not necessary for the appellant to go farther than to show the knowledge and experience of the witness; while, on cross-examination, it would probably have been proper to test his knowledge and experience by a proper examination. If a witness should be permitted to state what is "commonly understood by the medical profession," a never-ending investigation would be opened and a collateral matter presented that would, as the evidence before us makes apparent, lead to an almost endless conflict of opinion. There would be, at best, an intangible conflict of opinion without any authoritative method of settling it. If the defendant were permitted to ask such a question, then the plaintiff would be entitled to meet it, so that the contest would fall upon the vague and uncertain subject of what professional men "commonly understood." What men commonly understand can be determined only by an inquiry into their mental processes, and such an inquiry ought not to be allowed upon a purely collateral question. A matter so vague and so intangible ought not to be made the subject of inquiry, unless it is directly in issue, as motive, intention, or the like.

Appellee's counsel asked on the cross-examination of Dr. Painter, one of the expert witnesses introduced by appellant, this question: "Suppose she received a shock upon her feet going a distance of four or five feet outward and some three feet downward, as much as two years and six months ago, how far would such a shock account for her present condition?" We have no doubt, although the question is some-

what confused, that the ruling of the trial court was right. The witness testified, in his evidence in chief, that he had examined the appellee, described her condition, and gave his opinion upon various phases of her case. It was, therefore, competent for the appellee to ask him for his opinion, not only for the purpose of testing his ability as an expert, but, also, for the purpose of placing the opinion before the jury as sustaining her theory. *Louisville, etc., R. W. Co.* v. *Falvey, supra,* and cases cited; Rogers Expert Testimony, 50.

It is a mistake to suppose that when counsel in the examination in chief open on a general subject, the line of examination adopted must be followed by cross-examining counsel; on the contrary, it is well settled that where the direct examination opens on a general subject, the cross-examination may go into any and all phases of that subject. *DeHaven* v. *DeHaven,* 77 Ind. 236; *Vogel* v. *Harris,* 112 Ind. 494.

On a cross-examination counsel may dissect and separate, or unite and join, the facts involved in the general subject. The only restriction upon the the right of cross-examination, so far as affects the question as it is here presented, is that it must be confined to the subject-matter of the examination in chief. As decided in *Higham* v. *Vanosdol,* 101 Ind. 160, a distinct and independent subject can not be introduced on cross-examination, but the cross-examination may go to all matters involved in the subject embraced in the examination in chief.

It is said by counsel that " the eighteenth cause for a new trial raised the question whether Dr. E. P. Easley could answer certain questions from his opinions derived from medical books." We do not think that the record presents the question just as counsel state it.

The witness was asked : " What effect would her, the plaintiff, living with a man who was a paralytic have upon her; how and in what way would it affect her ? " To this he answered : " I can't say what effect it would have upon her; I could recite the reported cases. We know that persons have

The Louisville, New Albany and Chicago Railway Company v. Wood.

become paralytics simply by waiting on a paralytic." We incline to the opinion that it would not, in any event, be proper to recite special cases reported in medical books; but, however this may be, no offer of evidence was made, and no question is presented which will avail the appellant. In this instance, we may observe, the witness was permitted to give his opinion derived from the books, and the only effect of the ruling was to deny the right to give special cases reported in the works of medical writers. Lawson Expert and Opinion Evidence, 169, and cases cited.

The only argument made in support of one of the points stated by counsel is this: "The twenty-first, twenty-second and twenty-third causes assigned for a new trial are good under the rulings in the cases of *Strohm* v. *N. Y., etc., R. R. Co.*, 96 N. Y. 305, and *Curtis* v. *Rochester, etc., R. R. Co.*, 18 N. Y. 541."

The questions asked the medical witnesses were as to the probable results that would follow from an injury described by the witnesses who testified on the trial. We understand it to be well settled that such questions are proper. Lawson Expert and Opinion Evidence, 108–114; Rogers Expert Testimony, 81, 85, 107.

The cases cited by counsel are directly against them, for they both concede that it is competent to ask an opinion as to probable results, although it is held that merely speculative opinions are not competent.

In the last of the cases cited it was said, in speaking of an instruction that the true rule was as laid down, that "the plaintiff could only recover damages for such pain and suffering as the evidence rendered reasonably certain would necessarily result from the injury."

One of the attorneys of appellant had made an affidavit in support of an unsuccessful motion for a continuance, and this, when offered in evidence, was excluded. Clearly, there was no error in this ruling.

Appellant offered to prove by the same attorney what the

conductor, who, as the evidence shows, pulled the appellee from the train, said as to attending the trial. There was no error in this ruling. What the witness proposed to state was mere hearsay, and its exclusion is sustained by one of the plainest rules of evidence. The appellant had a right, either by compulsory process, or by deposition, to the testimony of the witness, but it had no right to have his statements rehearsed to the jury.

We think appellant's counsel are in error in assuming, as they impliedly do, that Dr. Neal did not examine the appellee in a professional capacity, for the record shows not only that he visited her in that capacity, but that he did so under the order of the court. It is well established by authority, that statements made to a physician in his professional capacity are competent when descriptive of existing symptoms or pains, although they are not admissible when mere narratives of past occurrences. *Cleveland, etc., R. R. Co. v. Newell*, 104 Ind. 264; *Louisville, etc., R. W. Co. v. Falvey, supra*, and cases cited; *Murphy v. New York, etc., R. R. Co.*, 66 Barb. 125; *Kent v. Town of Lincoln*, 32 Vt. 591, 597; *Barber v. Merriam*, 11 Allen, 322; *Looper v. Bell*, 1 Head, 373; *Eckles v. Bates*, 26 Ala. 655; *Yeatman v. Hart*, 6 Humph. 374; *Hatch v. Fuller*, 131 Mass. 574; *Atchison, etc., R. R. Co. v. Johns*, 36 Kan. 769.

In the case last cited, the authorities are collected and reviewed, and it was said: "But the mere fact that the declarations are made after suit has been commenced and while it is pending will not be sufficient to exclude the declarations, and generally they should be allowed to go to the jury." This is in accordance with our decisions and with the decided weight of authority. Following *Quaife v. Chicago, etc., R. W. Co.*, 48 Wis. 513 (33 Am. Rep. 821), this court said, in speaking of declarations such as those here given in evidence: "They are especially competent and of more weight when made to a physician for the purpose of receiving treatment, or to a medical expert who makes an examination at

the request of the opposite party, or by direction of the court, for the purpose of basing an opinion upon as to the physical situation of the person whose condition is the subject of inquiry." *Cleveland, etc., R. R. Co.* v. *Newell, supra.* As suggested in the case from which we have quoted, and in some of the Massachusetts cases, without some information as to the seat and character of pain, and as to the symptoms of the sick or injured person, it is impossible in many cases for a physician to form an intelligent opinion, for many of the organs of the human body are concealed from view. *Roosa* v. *Boston Loan Co.,* 132 Mass. 439; *Bacon* v. *Charlton,* 7 Cush. 581; *Barber* v. *Merriam, supra.*

It results that, as said in *Cleveland, etc., R. R. Co.* v. *Newell, supra,* and other cases, the evidence is admitted on the ground of necessity. That this is true, is obvious, since its denial would in many cases completely thwart justice. Another well settled legal principle supports the rule, and that is this : where an act or transaction is competent, declarations forming part of the thing done are also competent.

Dr. Neal was asked, " whether the condition of the womb, in which you found it day before yesterday, will account for the condition of the spine and its tenderness, as well as the drawn limbs and all the conditions now." The objection to this question is, that the witness had not stated the facts to the jury. We think it only necessary to say, on this point, that counsel's position rests on an erroneous assumption. We think the facts relevant to the opinion were fully in evidence. Indeed, the question itself directs the attention of the witness to a fact that must have come under his own observation, and, of necessity, involved in the matter on which his opinion was asked.

We set out the instructions given at the request of the appellee, as they contain the strongest expression of the law against the appellant found in the series. These are the instructions :

" 1. If the plaintiff was a passenger upon defendant's

The Louisville, New Albany and Chicago Railway Company v. Wood.

road in one of defendant's coaches, as charged in her complaint, the defendant's obligation was to carry her safely and properly; and if the defendant entrusted this duty to the servants of the company, the law holds the defendant responsible for the manner in which they execute it. The carrier is obliged to protect its passengers from improper and unnecessary violence at the hands of its own servants. And it is the established law that a carrier is responsible for the negligence and wrongful conduct of its servants, suffered or done in the line of their employment, whereby a passenger is injured.

"2. The duty of a carrier is to safely carry passengers. It is true that a carrier of passengers is not an insurer of the safety of those whom it undertakes to carry, against all the risks of travel, but, nevertheless, there rests upon such carrier this general duty of safely carrying.

"3. A carrier of passengers for pay is responsible for injuries sustained by a passenger through the neglect, recklessness and carelessness of the servants of such carrier, while such servants are engaged in the general scope of their employment, whether the act was, or was not, authorized by the master.

"4. A passenger is warranted in obeying the direction of the servants and agents of the carrier, when given within the scope of their duty, unless such obedience leads to a known peril which a prudent person would not encounter.

"5. If in this case the jury believe, from a fair preponderance of the evidence, that the plaintiff obeyed the defendant's conductor in charge of the train upon which she was a passenger, in getting off of the train, and if she was not then apprised of any peril that she would encounter thereby, she would not be guilty of contributing to any injuries received by her in thus alighting from the train.

"6. If the fact be that the defendant's conductor, having charge of the train upon which plaintiff was a passenger,

seized hold of her while the train was in motion and was moving on, and pulled her from the platform of the coach by the exercise of physical force, and thereby caused her to strike the ground or other hard substance below, whereby she was injured, she would not be guilty of contributing to injuries received thereby.

" 7. If plaintiff did not receive the injuries complained of by any contributing act of negligence or fault of her own, but was injured at the time complained of by the carelessness and negligence or fault of the defendant's servants, or one of them, committed in the general scope of employment as such servants or servant, the defendant is liable for such damages as she may have sustained by the injuries thus received.

" 8. If you find for the plaintiff, you are instructed that in assessing plaintiff's damages you can not exceed the sum sued for in the complaint, which is twenty-five thousand dollars; and in assessing the damages, it is proper that you consider the injuries received by plaintiff, their extent, whether of a temporary or permanent character, and you may take into consideration loss of time, expenses incurred, physical suffering, bodily pain and permanent disability, if proved to be direct results of the injuries described in the complaint; and you should thereupon assess such compensatory damages as in your opinion the evidence before you warrants.

" 9. A railroad company, carrying passengers for hire, has not discharged its duty or relieved itself from liability to them till it has stopped at the end of their journey a reasonable time for them to get off the train in safety."

In our judgment, these instructions stated the law quite as favorably to the appellant as it had a right to ask. If there is error in them it is against the appellee. It is said by counsel that the first and second instructions given for the plaintiff are mere abstract propositions. We, however, regard them as correct statements of the law, well applied to the particular case.

The Louisville, New Albany and Chicago Railway Company v. Wood.

The fourth and fifth instructions are correct in their statement of legal principles. *Cincinnati, etc., R. R. Co.* v. *Carper*, 112 Ind. 26 ; *Lake Shore, etc., R. W. Co.* v. *Pinchin*, 112 Ind. 592.

We do not, in thus holding, controvert the doctrine that a passenger must not obey the directions of the employees where it will lead to known danger which a prudent person would not encounter ; on the contrary, we approve these instructions because they assert that doctrine.

We can not hold that the instructions are not relevant to the evidence, nor can we hold that they are not within the issue tendered by the complaint. The use of the epithet " wilful " does not control the other averments. We think it must be regarded as conclusively settled by our cases, that the use of the words " wilful " or " wilful negligence " does not change the character of the pleading. As a matter of pleading, epithets are of no great force. *Palmer* v. *Chicago, etc., R. R. Co.*, 112 Ind. 250 ; *Gregory* v. *Cleveland, etc., R. R. Co.*, 112 Ind. 385 ; *Louisville, etc., R. W. Co.* v. *Ader*, 110 Ind. 376 ; *Louisville, etc., R. W. Co.* v. *Bryan*, 107 Ind. 51 ; *Belt R. R. Co.* v. *Mann*, 107 Ind. 89 ; *Louisville, etc., R. R. Co.* v. *Schmidt*, 81 Ind. 264.

It is alleged in the complaint, among other things, that " The plaintiff sustained said injuries without any fault on her part, and that the same were received by her because of the negligence, careless, wilful, heedless and improper acts of said conductor." This, taken in connection with other averments, makes the cause of action one of negligence, rather than of intentional and malicious wrong. What the conductor did, although constituting a tort, did not, upon the theory of the complaint, constitute a wilful and intentional assault. It is evident that the theory on which the complaint proceeds is, that the wrong was not an intentional or malicious one, for it is alleged that it was heedless and negligent, and that there was no contributory negligence on the part of the plaintiff. The court below construed the

complaint as we construe it, and so, also, did the appellant, as appears from the instructions given at its request, the first of which reads thus:

"1. The jury are instructed that this is an action on the part of the plaintiff to recover damages against the defendant for injuries alleged to have been sustained by the plaintiff on the night of the 21st day of October, 1882, in getting off of the steps of a car of one of defendant's passenger trains at Campbellsburg; the plaintiff alleging that 'the conductor of said train negligently, heedlessly, wilfully, carelessly and improperly seized her while said train was in motion, and without any fault or negligence of the plaintiff whatever, he wrenched her off of said steps and jerked her to the ground, where she alighted in a twisted posture,' thereby injuring her feet, legs and body generally, and causing a concussion of the spine, resulting in paralysis of the lower limbs, rendering her unable to walk, and that such injuries are permanent. The answer of the defendant is a general denial, which casts upon the plaintiff the burthen of proving: 1st. That she was wrenched off of the steps of said car and jerked to the ground by the conductor. 2d. That the injuries alleged by the plaintiff were the direct and immediate consequences of the manner in which she was taken off the train; and 3d. That the plaintiff did not, by any act or conduct of hers at the time, contribute to the injury, and that she was free from fault or negligence on her part."

The doctrine of *Carver* v. *Carver*, 97 Ind. 497, 516, applies here with peculiar force: "When a theory is thus adopted, and acted upon below, with the concurrence of both parties, a judgment ought not to be reversed because the court instructs the jury in accordance with it."

The only objection urged against the instructions given by the court on its own motion, not disposed of by what we have already said, is, that they direct the jury to find a general verdict, and thus impliedly instructed them not to return a special verdict.

A number of interrogatories were submitted by the parties and the court, and we are inclined to the opinion that the fair meaning of the instructions on this point is, that in case answers were returned to the interrogatories. there must also be a general verdict. If this be true there was no error. But, if we are wrong in this, still there can be no reversal, for our statute provides that "In all actions, the jury, unless otherwise directed by the court, may, in their discretion, render a general or special verdict." R. S. 1881, section 546 ; 1 Works Pr., section 849.

The court has authority to direct a general verdict, and we must presume that the authority was justly exercised, for, until the contrary appears, all reasonable intendments are indulged in favor of the rulings of the trial court.

Conceding that the fourth instruction asked by the appellant was correct (a concession not warranted, as we incline to think), it was substantially embodied in the third instruction given at appellant's request. It is too well settled to require the citation of authorities, that a trial court is not bound to repeat its instructions. What we have said of the fourth instruction applies to the sixth, seventh and eighth instructions asked by the appellants; for, so far as they were correct, they were substantially included in other instructions given.

The tenth instruction does not express the law, and was rightly refused. It is not necessary that the wrong-doer should apprehend the particular consequences which may proximately result from his act, although the act must be of such a nature as to produce some injurious result. To illustrate : A man ill with consumption, who is wrongfully injured in alighting from a train, and so injured as that a hemorrhage results, has a right to recover, although the servants of the carrier may not have had reason to apprehend such a result. *Jeffersonville, etc., R. R. Co.* v. *Riley,* 39 Ind. 568.

In no case is it necessary that the particular result which follows should be anticipated. Certainly, no man who strikes

a feeble person and injures him can be heard to say that he did not anticipate that it would hurt him more than it would have done a robust man.    Where a tort is committed, injury may reasonably be anticipated, and the wrong-doer is liable for the proximate results of that injury, although the injury extends further than it would have done had the injured person been in perfect health.    It is the general character of the act, and not the particular result, that the law regards.    It is true that the act which causes the injury must be a negligent one, and this it can not be unless the facts show that it was one which ordinary care would have enabled the person who did it to foresee and provide against.    *Wabash, etc., R. W. Co.* v. *Locke,* 112 Ind. 404.

There is a plain difference between the wrongful act and its consequences, for when a wrongful act is done, the wrong-doer must answer for all proximate consequences, although he may not have foreseen or anticipated the particular form or character of the resulting injury.    The doctrine which the authorities lay down is thus stated in *Hill* v. *Winsor,* 118 Mass. 251:    " The accident must be caused by the negligent act of the defendants; but it is not necessary that the consequences of the negligent act of the defendants should be foreseen by the defendants.    It is not necessary that either the plaintiff or the defendants should be able to foresee the consequences of the negligence of the defendants, in order to make the defendants liable.    It may be a negligent act of mine in leaving something in the highway.    It may cause a man to fall and break his leg or arm, and I may not be able to foresee one or the other."

In the same case it was said:    " It is not necessary that injury in the precise form in which it in fact resulted should have been foreseen."    *Lane* v. *Atlantic Works,* 111 Mass. 136.

In *Newell* v. *Whitcher,* 53 Vt. 589 (38 Am. Rep. 703), the court was asked to charge the jury, "that if defendant's acts and conduct would not have injured a person of ordinary nerve and courage, then there can be no recovery," and it

was held that this instruction was properly refused. But we can not add to the length of our already very long opinion by commenting upon the authorities. We refer without discussion to some of the many decided cases : *Jeffersonville, etc., R. R. Co.* v. *Riley, supra; Terre Haute, etc., R. R. Co.* v. *Buck, supra; Louisville, etc., R. W. Co.* v. *Falvey, supra; Louisville, etc., R. W. Co.* v. *Jones,* 108 Ind. 551 ; *Indianapolis, etc., R. W. Co.* v. *Pitzer,* 109 Ind. 179, and cases cited p. 188; *Stewart* v. *City of Ripon,* 38 Wis. 584; *Oliver* v. *Town of La Valle,* 36 Wis. 592; *Kellogg* v. *Chicago, etc., R. W. Co.,* 26 Wis. 223 (7 Am. Rep. 69); *McNamara* v. *Village of Clintonville,* 62 Wis. 207 (51 Am. Rep. 722); *Brown* v. *Chicago, etc., R. W. Co.,* 54 Wis. 342 (41 Am. Rep. 41); *Williams* v. *Vanderbilt,* 28 N. Y. 217 ; *Ehrgott* v. *Mayor,* 96 N. Y. 264 (48 Am. Rep. 622); *Beauchamp* v. *Saginaw Mining Co.,* 50 Mich. 163 (45 Am. Rep. 30); *Barbee* v. *Reese,* 60 Miss. 906; *Baltimore, etc., R. W. Co.* v. *Kemp,* 61 Md. 74; *Fitzpatrick* v. *Great Western R. W. Co.,* 12 U. C. Q. B. 645.

"The general rule," says an eminent court, "is that, in actions of tort like the present, the wrong-doer is liable for all the direct injury resulting from his wrongful act, and that too although the extent or special nature of the resulting injury could not, with certainty, have been foreseen or contemplated as the probable result of the act done." *Baltimore, etc., R. W. Co.* v. *Kemp, supra.*

A late writer collects many cases and lays down the rule, in very strong terms, as we have declared it. 2 Wood Railway Law, 1232.

We conclude that, both upon principle and authority, an injured person may recover compensatory damages for injuries sustained, although the wrong-doer did not know or could not foresee that the special or particular injury would be greater to the person upon whom the wrong was actually inflicted than to one in full strength and robust health. A person, feeble or strong, young or old, is entitled to recover

full compensation for the injury actually sustained by the acts of a wrong-doer.

In instructions given at the request of the appellant it was asserted in express terms, and probably in stronger language than the law warrants, that the plaintiff could not recover if the injuries resulted from disease and not from the negligence of the defendant, and it was unnecessary to repeat these instructions.    Two of these instructions read thus :·

"7. By direct and immediate cause and proximate cause as used in all the instructions in this case, is meant such cause or causes as are usually and ordinarily followed by the result attributed to the act or acts, and such as a person of ordinary experience and judgment could reasonably apprehend would follow as the direct effect of the act or acts charged as being the cause of the injury."

"13. If the jury believe from the evidence that the plaintiff's injured and diseased condition is due to chronic womb disease, and other ailments existing prior to the 21st of October, 1882, and not the direct and immediate result of the manner in which she was assisted from the car steps, then the verdict of the jury must be for the defendant."

It may be that the appellee can justly complain of these instructions, but, certainly, the appellant can not.

The instruction asked after the argument was closed was properly refused.   A party has no right to demand an instruction at so late a period in the trial.

Seventy-five interrogatories were submitted by the appellant, and the court refused to send sixty of them to the jury, but did send fifteen of them, and did also prepare and submit other interrogatories to the jury.   We perceive no error in the ruling of the court on this subject.   All of the rejected interrogatories, except, perhaps, the sixty-fifth, are open to the objection that they ask for evidence, and not facts. There is everywhere in jurisprudence an important difference between evidence and facts, and in no branch of jurisprudence is it more important than in that which governs the

verdicts and findings of juries. It would lead to most evil consequences to permit a party to compel the jury to rehearse mere items of evidence. But it is needless to discuss the question; our statute and our decisions forbid the practice here defended by the appellant. We can not examine the interrogatories in detail; it is enough to say, that if there was error at all in the ruling of the court, as we think there was, it was in giving some of the interrogatories submitted by the party who now complains.

The nineteen interrogatories submitted included fifteen of those asked by appellant, and, certainly, were as many as it was proper to submit; they were, indeed, more than the case required.

There is evidence very satisfactorily proving that prior to the accident Mrs. Wood was a strong and healthy woman, about forty years of age. It is further shown that her husband was a paralytic, and that she did the household work of a woman and the work of a man in managing the business affairs of a farm. The evidence also shows that prior to the accident she did a farmer's hard work, such as hauling wood, making hay and the like. Since the accident she has been physically almost helpless, and is unable to do any work. Her injuries are of a permanent nature, and, from the evidence, the fair inference is that she will probably grow worse. She has suffered much, and it is reasonably certain will suffer more as the years go by. Her vision is affected, her hands and legs are partially, if not totally, paralyzed, and there is some curvature of the spine. It is very apparent, therefore, that there is evidence fully warranting the inference that the appellee is a physical wreck, and, indeed, the evidence fairly justifies the inference that her mental powers are seriously impaired. We can not, under these circumstances, declare that the damages are the result of passion, prejudice or corruption, and it is only where this can be justly asserted that a verdict can be set aside. *Hoagland* v. *Moore*, 2 Blackf. 167; *Guard* v. *Risk*, 11 Ind. 156; *Yater* v. *Mullen*, 23 Ind. 562;

*Alexander* v. *Thomas,* 25 Ind. 268; *Reeves* v. *State, ex rel.,* 37 Ind. 441; *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261 (38 Am. R. 134); *Lake Erie, etc., R. R. Co.* v. *Fix,* 88 Ind. 381; *Indiana Car Co.* v. *Parker, supra; Carthage T. P. Co.* v. *Andrews,* 102 Ind. 138; *Louisville, etc., R. W. Co.* v. *Falvey, supra; Chicago, etc., R. R. Co.* v. *Holland,* 18 Bradw. 418; *Groves* v. *City of Rochester,* 39 Hun, 5; *Osborne* v. *City of Detroit,* 32 Fed. R. 36.

It is alleged as a cause for a new trial that some of the jurors were guilty of misconduct. The evidence upon this point very fully and satisfactorily supports the finding of the court, and we can not interfere. It has long been the rule in this, as in other appellate courts, that where a question of fact is decided by the trial court, it will not be disturbed if there is evidence fairly sustaining it. *Pedigo* v. *Grimes, ante,* p. 148, and authorities cited.

We have thus, with patience and care, examined all the questions properly saved, and, as we are not able to find any error, we must affirm the judgment.

Filed Dec. 21, 1887.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—It is assumed in the brief in support of the petition for a rehearing, that the complaint does not show that the wrongful act was done by the company. This assumption is not sustained by the record.

The complaint does aver that the train was in the exclusive control of the defendant's employees, and that the conductor who had charge thereof did negligently cause the injury to the plaintiff by causing the train to move while she was still on the platform, and by jerking her to the ground. If the conductor was the one in charge of the train, as the complaint avers and the demurrer admits, he was the agent of the company so far as concerned the rights of passengers in alighting from the train. Upon this subject the cases are numerous and harmonious. The general rule is thus

stated by CAMPBELL, J., in *Great Western R. W. Co.* v. *Miller*, 19 Mich. 305: "He represents them in his whole management of his train." *Cincinnati, etc., R. R. Co.* v. *Carper*, 112 Ind. 26 ; *Bass* v. *Chicago, etc., R. W. Co.*, 36 Wis. 450; *Chicago, etc., R. W. Co.* v. *Ross*, 112 U. S. 377 ; *Rauch* v. *Lloyd*, 31 Pa. St. 358 ; 1 Wood Railway Law, 449.

We say this much on the petition for the reason that counsel claim that we did not fully understand their position in the original argument. All the other questions are fully discussed and decided in the previous opinion.

Petition overruled.

Filed March 6, 1888. .