## ERASTUS H. TOWN v. THE MICHIGAN CENTRAL RAILROAD COMPANY.

*Railroad companies—Negligence—Open switch—Absence of lights—Fellow-servants.*

1. The closing of a railroad switch, and the removal of the lights,. with notice to engineers of passenger trains, who were required to slow up in passing it when in use, that it was abandoned, and that the track was thereafter to be treated as if no switch were there, and its reopening without any notice to such engineers, and without their knowledge, and its use without such. lights, make a clear case of negligence against the company, if the presence of such lights would have prevented the running of a passenger train into the switch, which question, in case of conflicting testimony, is for the jury.

2. In such a case it was contended by the company that the absence of the lights was not the proximate cause of the accident; that, if the switch had been locked, the train would have passed in safety; and that the opening or unlocking of the switch was caused either by the intermeddling of a stranger or trespasser, or by the negligence of fellow-servants of the plaintiff; and that he could not recover in either event. And it is. held that if the lights would have prevented the accident in the condition in which the switch was, by giving timely warning of the danger, the negligence of the company in reopening it for use without replacing the lights was just as much the proximate cause of the injury as the unlocking and turning of the switch rails; and. if they were concurrent causes, the defendant would be liable. 7 Amer. & Eng. Enc. Law, 828.

3. It was further contended by the company that the negligence,. if any, in not restoring the lights was that of the section master, a fellow-servant of the engineer, which fact barred a recovery. And it is held that, as the reopening of the switch and its use was by direction of the division superintendent of the company, acting as its agent, it became its duty either to notify the engineer of such reopening or to restore the lights, if not to do both, and a failure so to do would be its negligence, and not that of the section master.

Error to Monroe. (Kinne, J.) Argued November 21, 1890. Decided December 24, 1890.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*I. G. Humphrey,* for appellant, contended:

1. In respect to the condition of its roadway and switches, defendant owed plaintiff the same duty as to passengers lawfully on its train; citing *Railroad Co. v. Swett,* 45 Ill. 201; *Railroad Co. v. Welch,* 52 Id. 183; *Mehan v. Railroad Co.,* 73 N. Y. 585; and plaintiff would not have been guilty of contributory negligence even had he known that the track was somewhat out of repair; citing *Eddy v. Mining Co.,* 81 Mich. 548; and, while plaintiff might have been bound to take notice of dangers and defects of which he had knowledge, he was not bound to investigate other departments of work with which he had nothing to do; citing *Devlin v. Railway Co.,* 87 Mo. 545 (28 Amer. & Eng. R. R. Cas. 524).

2. Knowledge of the track-master, section foreman, or others who had charge of the track and switch, of its dangerous condition, was notice to the defendant: citing *Covey v. Railroad Co.,* 86 Mo. 635 (28 Amer. & Eng. R. R. Cas. 382); and if the defendant had knowledge of the increased danger, and did not inform plaintiff, it was negligence, and if it had no such knowledge it was negligent in not ascertaining the true condition; citing *Medina v. Perkins,* 48 Mich. 67.

3. The duty of the defendant to provide switch lights, and properly to guard all switches, has been settled; citing *Railroad Co. v. Daugherty,* 6 Amer. & Eng. R. R. Cas. 139; *Railroad Co. v. Worthington,* 21 Md. 275; and plaintiff had a right to assume that defendant had performed its duty, until notified of its neglect; citing *James v. Mining Co.,* 55 Mich. 335.

4. On the question of fellow-servants, counsel cited *Harrison v. Railroad Co.,* 79 Mich. 409.

*A. C. Angell (Ashley Pond,* of counsel), for defendant, contended:

1. From the mere fact of injury to a servant there is no presumption of negligence in the master. There must be evidence of negligence connecting him with the injury; citing *Mining Co. v. Kitts,* 42 Mich. 34; *Henry v. Railway Co.,* 49 Id. 495; nor will the jury be allowed to infer from the mere happening of such an accident that the master was negligent; citing *Kuhns v. Railway Co.,* 70 Iowa, 561; *Railroad Co. v. Hughes,* 119 Penn. St. 301.

2. The fact that the switch was open is not itself evidence of the

breach of any duty owing to plaintiff. The switch was opened either in the course of defendant's business by its servants, or by intermeddlers not in the course of its business. The fact of its being left unlocked by such servants would not alone make defendant liable for the injury. The plaintiff's business daily exposed him to such risks, and he must be held to have assumed them. The engineer and trainmen or switchmen were fellow-servants; citing *Harvey v. Railroad Co.*, 88 N. Y. 481; *Walker v. Railroad Co.*, 128 Mass. 8; *Railroad Co. v. Thomas*, 51 Miss. 637; *Lyon v. Railroad Co.*, 31 Mich. 429; and if some intermeddler, whether a servant or not, opened the switch, not in the course of defendant's business, it would not be liable to the plaintiff under the circumstances here; citing Wood, Ry. Law, 1071; *Deyo v. Railroad Co.*, 34 N. Y. 9; *Railroad Co. v. Thomas*, 51 Miss. 637.

3. The switch was fastened as were all the other switches on the line. It had been safely used for three weeks. Its opening on the night of the accident could not reasonably have been foreseen, and failure to render its opening and the accident impossible is not negligence; citing *Sjogren v. Hall*, 53 Mich. 274; *Burke v Witherbee*, 98 N. Y. 562.

4. If a railroad track becomes unsafe, as from a broken rail or open switch, the only duty resting upon the master is to warn his servant thereof; citing *Henry v. Railway Co.*, 49 Mich. 495; and it is obvious from the testimony that there was no notice to the defendant that this switch was opened, and in an unsafe condition for use, until the injury occurred; nor was it lacking in reasonable diligence in not discovering the fact that the switch was open; and there was no duty to warn the servant here, nor to close the switch before he reached it; citing Thomp. Neg. 971, 992; *Davis v. Railroad Co.*, 20 Mich. 105; *Railroad Co. v. Dolan*, 32 Id. 512.

5. The absence of a light upon the switch stand does not make defendant liable, as it was not the proximate cause of the injury, but the fact that the switch was open was such cause, and one is not liable for an injury of which his neglect is not the proximate cause; citing *Lewis v. Railway Co.*, 54 Mich. 55; *Selleck v. Railway Co.*, 58 Id. 195; and when there are two causes, the injury cannot be attributed to one of them unless without its operation the accident would not have happened; citing *Ring v. Cohoes*, 77 N. Y. 83.

6. No obligation rested on defendant to keep a light on this switch; citing *Railroad Co. v. Gildersleeve*, 33 Mich. 133; *Batterson v. Railway Co.*, 49 Id. 184; *Sjogren v. Hall*, 53 Id. 274; *Hewitt v. Railroad Co.*, 67 Id. 61; nor was the defendant's duty to plaint-

iff the same as that it owed to its passengers; citing Shear. & R. Neg. § 189.

7. Even if as to plaintiff the lack of the light was evidence of negligence, the fault was that of the section master, a fellow-servant, for which defendant is not liable; citing *Mining Co. v. Kitts*, 42 Mich. 34; *Railroad Co. v. Austin*, 40 Id. 247; *Adams v. Iron Cliffs Co.*, 78 Id. 271; and the duty of lighting a lamp and putting it on a switch was obviously not that of a master, and the failure so to do is strictly analogous to the failure to put out a flag as a warning of danger, and a foreman's failure to do this, whereby an inferior servant was injured, was held to be the negligence of a fellow-servant in *Peterson v. Railway Co.*, 67 Mich. 102.

8. Plaintiff was chargeable with notice that the switch was again in use, and the lack of a light does not afford him ground of complaint. He had run by the switch twice each day since it was in use,—nearly or quite three weeks. There had been cars standing on the cross-over constantly during this time. There were two there the night of the accident, close to the main track, which must have been there when he passed north in the morning. He knew the men were at work there on a siding, and, though he says he did not know that the switch was again in use, he was chargeable with notice of it, because by ordinary observation in the course of his duties he could have discovered it; citing *Railroad Co. v. Austin*, 40 Mich. 247; *Illick v. Railroad Co.*, 67 Id. 632; *Hewitt v. Railroad Co.*, Id. 61; *Balle v. Leather Co.*, 73 Id. 158.

MORSE, J. The plaintiff, a locomotive engineer upon a passenger train of the defendant at the time of his injury, brought suit in the Monroe circuit court to recover damages for such injury occasioned by the derailment and wrecking of his train. The court below directed a verdict for the defendant.

The accident was caused by a misplaced switch, and happened on the evening of Sunday, April 29, 1883, in the township of La Salle, in Monroe county, at about 8:30 o'clock. At this place the line of the Lake Shore & Michigan Southern Railway Company runs parallel with, and a few rods west of, the line of the Michigan Central Railroad Company. Some years prior to this time there

had been built a track to connect the tracks of the two railroads. The switch which caused the accident was formerly used in connection with this cross-over track, for transferring and passing trains from one road to the other. About a year before the accident, this connecting track went out of use, and the rails of the switch were securely spiked, and the switch abandoned, and the target and lights removed. Some three weeks prior to the injury to plaintiff, these spikes were removed, and the switch put into use again. This was done by trainmen who were running local freight trains in at this place, loaded with material for the construction of side tracks on each side of the main track near this switch. It would appear from the testimony of Mr. Sutherland, division superintendent of this part of the road, that this reopening of the switch for the use of these local trains in storing cars upon this cross-over track was authorized by and known to him, but no notice was given to Mr. Town or any of the engineers or conductors on the passenger trains that the switch was in use again. The target and lights were not restored, nor was there any switch-tender, as there had been when the switch was in use before it was spiked.

In the morning before the accident, plaintiff had run his engine and train, consisting of two cars and a smoker, from Toledo to Detroit, as he was accustomed to do, and was returning to Toledo in the evening. His train was behind time, and he was running at the rate of 45 to 50 miles an hour. This was no faster than he was permitted to run, and there seems to be no claim that he was running faster than he ought, if there had been no switch in use there. The switch had been partly opened from some cause, and the rails so moved that the flange of the locomotive wheel struck the end of the easterly movable rail about in the middle. The engine was thrown into

the ditch and wrecked, and the plaintiff injured. The switch was found to be unlocked. There were two locks upon it,—one, a Michigan Central Railroad lock, which was hanging to a chain and not used, and the other, a Canada Southern Railway lock, was found upon the ground unlocked. Some of the witnesses testified that they examined this Canada Southern lock, and found no marks or bruises upon it; others swear that they examined it the next morning, and found it bruised as if it had been pounded open, and near by they found a fish plate which had brass upon it, appearing thereby to be the instrument with which the lock had been pounded open, the lock being made of brass. Michael Phelan, who was foreman of the gang of men who were grading for the side tracks, testified that the Canada Southern lock was used because he could not open the Michigan Central lock, and the roadmaster had the section men at his request put on the Canada Southern lock, as he (Phelan) had a key to that. It was customary, when they went in or off of this cross-over track, to lock the switch. He is positive that he locked it between 4 and 6 o'clock P. M. when they quit work on the Saturday before this Sunday of the accident, and he did not unlock it afterwards.

The plaintiff testified, as did also the conductor of his train, that after the switch was abandoned they received notice that the lights from that switch would be taken down, that the agent was removed, and the station shut up. There had been before this a station there, called "Otter Creek," where there was an operator and switch-tender. The conductor testified that he had notice from Sutherland, as he supposed, through one J. B. Morford, of the condition of this station, and that it was to be thereafter nothing more than any other piece of track between stations; that he received this information from an officer of the company. The conductor notified the

plaintiff. Both of them swear that they did not know, until after the accident, that the switch was being used, or that it was not spiked and closed, and they therefore treated the track as if there were no switch there.

There can be no dispute from the record that at first there was a switch at this point, with target and lights and switch-tender as long as it was used. When the transferring of cars ceased, this switch was practically abandoned, and the section master securely spiked and closed it about a year before the accident. The target, lights, and tender were removed. The section master knew of its second use, but the target and lights were not restored until after the accident, and the plaintiff was not notified of its use again. It is disputed that he ever received any notice from any officer of the defendant of the abandonment and closing of the switch, or that he was authorized to treat the track there as if in fact no switch were in existence. It is also claimed that cars were standing on this cross-over track every day for two weeks, and the switch was being used daily for three weeks, before the accident, and he must have known of it. No other notice, however, was shown to him. These disputed questions of fact were matters for a jury.

I think the plaintiff was entitled to go to the jury upon his theory of the case, and the testimony that he produced to support it. It is shown by the rules of the company that an existing switch which is in daily use is recognized as a place of danger, and engineers on passenger trains are required to slow up, and not run faster than 15 miles an hour, in passing one. It is also shown that the lights upon the switch stand are so arranged that, if the switch is out of place and therefore dangerous, the color of the light will at once, and certainly, show the danger. Therefore the closing of this switch, and removing these lights, with notice to plaintiff that

the switch was abandoned, and the track thereafter to be treated as if no switch were there, and the subsequent opening of the switch without any notice to plaintiff, and without his knowledge, and its use without such lights, if such lights would have prevented the accident, make a case of negligence against the defendant without any fault upon the part of the plaintiff.

There was testimony tending to show that, if there had been lights upon the switch, such lights could have been seen in time, and the train stopped, so as to have prevented any accident. There was also testimony tending to show that the lights could not have been seen in time to prevent the derailment of the train. This dispute was for the jury.

It is contended that the plaintiff cannot recover because the absence of the lights was not the proximate cause of the accident; that, if the switch had been locked, the train would have passed safely by as it was, without any lights; and that the opening or unlocking of the switch was caused either by the intermeddling of some stranger or trespasser, or by the negligence of fellow-servants of the plaintiff; that he could not recover in either event. But I do not so understand it. If the plaintiff's theory be true, the lights would have prevented any accident in the condition in which the switch was, as they would have warned the plaintiff in time to avoid the danger; so the negligence of the defendant in opening this closed switch for use, without any lights to warn plaintiff of the presence of the switch or its danger, was just as much the proximate cause of the injury as was the turning of the switch rails. And it certainly was a concurrent cause, and the injury in any event, under the plaintiff's theory and evidence, was occasioned partly through the negligence of the defendant as to the switch lights, and partly by the condition of the switch rails, in which

case the defendant would be liable. 7 Amer. & Eng. Enc. Law, 828. It was the duty of the defendant to have notified the plaintiff of the opening of this switch, or, in the absence of such notice, to have placed over it the customary warning signals, when it had before that time notified him of the practical removal of the switch, and authorized him to treat that portion of the road as if no switch were there, and which he could have done in safety if the defendant had not removed the spikes and reopened it for use.

It is also contended by defendant's counsel that the negligence, if any, in not restoring the switch lights was the negligence of the section master, who was a fellow-servant of the plaintiff, and therefore the plaintiff cannot recover for his injury. But this negligence in using the switch again without notice to the plaintiff, and in not restoring the lights, was not the negligence of the section master. The defendant company abandoned the switch, and shut up the station, and removed the lights in the first place. It was the division superintendent, and not the section master, who directed or authorized the removal of the spikes and the second use of the switch; and in doing this he was the agent of the company. It then became the duty of the defendant, not of the section master, except as he acted under the direction of the company, either to notify the plaintiff that there was a switch in use there, or to restore the lights, if not to do both, and the negligence in not doing so would be the negligence of the defendant rather than of the section master.

The judgment of the court below is reversed, with costs, and a new trial granted.

The other Justices concurred.