OLSON v. OREGON COAL & NAVIGATION CO.

(District Court, N. D. California. August 3, 1899.)

No. 11,432.

1. SEAMEN—PERSONAL INJURIES—LIABILITY OF OWNER OF SHIP.
    The master of a ship and a seaman are fellow servants in all matters pertaining to the navigation of the ship while on a voyage from one port to another, and each assumes the risk of the other's negligence in the discharge of the duties incident to their common employment.

2. SAME—NEGLIGENCE OF MASTER.
    The owners of a ship are not liable in damages for the personal injury of a seaman received while on a voyage by falling, or being thrown by the rolling of the vessel, down a hatchway which had been left open through the negligence of the master or other officer, where a proper hatch was provided, and no claim is made of negligence in the selection of the officers.

This is a suit in admiralty by a seaman against the owners of the vessel to recover damages for a personal injury.

H. W. Hutton, for libelant.
Geo. W. Towle, Jr., for respondent.

DE HAVEN, District Judge. This is a suit in admiralty to recover $15,000 damages for personal injuries alleged to have been received by the libelant on board the steamer Empire. The libel alleges, in substance, that on the 22d of February, 1897, the defendant was the owner of and engaged in operating the steamer Empire, and the libelant was employed thereon in the capacity of ship carpenter; that on the date named the said steamer, with the libelant on board, left the harbor of San Francisco, bound on a voyage to Coos Bay, in the state of Oregon; that she had no cargo on board, and was light, and "by reason thereof liable to sudden, unusual, and violent motions when in waters agitated by the wind"; that on the day named there was a heavy sea on the bar at the

entrance of San Francisco Harbor; that, although there were hatch covers on board the steamer, the defendant negligently and carelessly operated her on that day with the after-hatch uncovered, "and thereby made the deck of the said steamer Empire unsafe and dangerous; and while the libelant on said day was performing his duty upon the said steamer, as such ship carpenter, and in the performance of his duties as such carpenter was going from the after part of the said vessel to the forward part, he, without any fault on his part, was thrown from his feet by a roll of the said steamer Empire, and, by reason of the after-hatch of the said steamer being uncovered, he was thrown down the after-hatch of said steamer, * * * and thereby suffered a compound comminuted fracture of the right thigh," and by reason thereof was compelled to go to the United States Marine Hospital at San Francisco, where he has been since confined, "and has suffered great physical pain and mental anguish by reason of the premises aforesaid, and for like reason has become permanently and totally disabled; * * * all to the libelant's damage in the sum of fifteen thousand ($15,000) dollars." It is not alleged in the libel that defendant or its servants refused or neglected to properly treat or care for libelant after the injury received by him. To this libel certain exceptions have been filed, which make it necessary to consider whether the facts alleged are such as to render the defendant liable in this action.

1. The defendant is a corporation, and therefore can only act through its agents or servants, so that the negligence with which it is charged must necessarily have been the personal negligence of some one employed by it; and for the purpose of passing upon the exceptions it will be assumed that this person was the master, to whom the navigation of the ship had been intrusted for the voyage mentioned in the libel. It is distinctly alleged that the steamer was provided with necessary hatch covers, and the act of negligence charged is that upon the occasion referred to in the libel the steamer was carelessly operated with the after-hatch uncovered. The question, then, is whether the defendant, as owner, is liable for this act of negligence upon the part of the master of the steamer. It will be readily conceded that no cause of action is stated against the defendant unless the libel shows upon its face that the defendant failed to perform some positive duty which it owed to the libelant as its employé. The duties which the owner of a ship owes to the seamen employed in its service are to see that the ship is seaworthy, properly manned, and equipped with all necessary appliances for the seamen's safety, and for the use of the ship; to provide them with sufficient food, and with medical attendance and care in case of sickness (Gabrielson v. Waydell, 135 N. Y. 1, 31 N. E. 969); to use due care in the selection of the master and other officers of the ship (Brown v. The D. S. Cage, 1 Woods, 401, Fed. Cas. No. 2,002; Hill v. Murray, 6 Ben. 141, Fed. Cas. No. 6,495); and he may also, under the general principles which govern the relation of master and servant, owe certain special duties to minors and seamen known to be inexperienced. Is there anything in the libel which can be construed as a charge that the defendant failed in the performance of any one of

these duties? I think not. The negligence complained of, namely, leaving uncovered the hatchway into which the libelant fell, was that of the master, or other officer whose duty it was to see that it was properly closed with the cover provided for that purpose by the defendant. Assuming this to have been the fault of the master, it was the negligence of a fellow servant of the libelant, for which the defendant, as owner of the steamer, is not liable to respond in damages. While it is true the master of a ship is a servant of higher grade than that of a seaman, and represents the owner in respect to the personal duties and obligations which the latter owes to the seamen, still in all matters pertaining to the navigation of the ship the master and seamen are fellow servants, engaged in one common employment, and each assumes the risk of the other's negligence in the discharge of the duties incident to such common employment. Gabrielson v. Waydell, 135 N. Y. 1, 31 N. E. 969; Scarff v. Metcalf, 107 N. Y. 211, 13 N. E. 796; Loughlin v. State, 105 N. Y. 159, 11 N. E. 371; The City of Norwalk, 55 Fed. 98. The cases of The Titan, 23 Fed. 413, and The A. Heaton, 43 Fed. 592, seem to hold that the master of a ship and his seamen are not fellow servants, because the latter, when at sea, are under the absolute control of the former; and in Jansen v. The Sachem, 42 Fed. 66, the same rule is stated, although the question was not involved in that case. Support for this conclusion was said in each of these cases to be found in Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184. In reference to the case just referred to, it will only be necessary to say that, if it can be considered as authority for the proposition that when servants are working for a common master, and one is placed in authority and control over the others in the performance of the work they are employed to do, the relation of fellow servants does not exist between them as to any matter connected with such common employment, then the doctrine of that case in this respect has been modified by the later case of Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, in which it was said:

"Prima facie, all who enter into the employment of a single master are engaged in a common service, and are fellow servants, and some other lines of demarkation than that of control must exist to destroy the relation of fellow servant. All enter into the service of the same master to further his interests in the one enterprise. Each knows, when entering into that service, that there is some risk of injury through the negligence of other employés, and that risk, which he knows exists, he assumes in entering into the employment."

And, speaking of the liability of the master to one servant for the negligent act of another, the court in that case further observed:

"The question turns rather on the character of the act than on the relations of the employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but, if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor."

This is in harmony with the later and best-considered cases. See Daves v. Southern Pac. Co., 98 Cal. 19, 32 Pac. 708; Crispin v. Babbitt, 81 N. Y. 516; Stockmeyer v. Reed, 55 Fed. 259.

Tested by this rule, it is difficult to see how the respondent can

be held liable for the damages claimed on account of the matters alleged in the libel. The master of the steamer and the libelant were engaged in a common employment; each in a different station, it is true, but still a common employment,—that of navigating the steamer from the port of San Francisco to Coos Bay, in the state of Oregon; and, conceding that it was negligence upon the part of the master to permit the hatchway to remain uncovered, still it was not negligence against which the owner of the steamer was required to guard. The law does not impose upon the owner of a vessel the duty of keeping its hatchways closed, when at sea, for the protection of seamen on board. It is one of the ordinary duties of the master, or other officer having charge of the deck, to see that they are closed at all proper times, and the seaman assumes whatever risk or danger may attend upon the negligent omission of the master or other officer to perform his duty in this respect; and the owner is no more responsible to a seaman for the negligence of a master in permitting the hatch to remain uncovered, whereby he was hurt, than he would be for the negligence of the master in allowing a cask, box or coil of rope to remain on deck out of its proper place, making an obstruction over which the seaman might fall, and receive injuries, while obeying the orders of such master. In the case of The City of Alexandria, 17 Fed. 392, it was held that a seaman was not entitled to recover damages from the owner of a steamship for injuries suffered by him in falling down an open hatchway while endeavoring to obey an order given him by the steward. One of the grounds upon which that action was sought to be maintained was that there was negligence upon the part of the officers of the ship in leaving open the hatch through which the libelant fell, and in disposing of the question thus presented the court said:

"Whatever negligence there was,—whether in leaving the hatches uncovered, or in not notifying the libelant as he went down,—was negligence on the part of those on board the ship, and in no way traceable to the owners themselves. It was neglect of the officers or men aboard in the performance of their ordinary duties; a neglect against which the owners could not possibly guard. * * * The navigation of a ship from one port to another constitutes one common undertaking or employment, for which all the ship's company in their several stations are alike employed. Each is in some way essential to the other, in furtherance of the common object, viz. the prosecution of the voyage. Each one, therefore, upon the principles laid down in the common-law courts, takes the risk of any negligence in the performance of his duties by any of his associates in the common employment."

The views thus expressed by the learned judge in delivering the opinion of the court in that case are sound in the principle which they announce, and are entirely applicable to the facts stated in the present libel. The exceptions will be sustained.