NAWAIEHA *v.* WILDER STEAMSHIP COMPANY, a corporation, and PAAUHAU SUGAR PLANTATION COMPANY.

DECIDED:  MAY 5, 1903.

1.  The master of a ship and a seaman thereon are fellow servants engaged in a common employment both in the navigation of said ship and while engaged in the loading and unloading of her cargo; and each assumes the risk of the other's negligence in the discharge of the duties incident to this common employment.

2.  The owner of a steam vessel is not responsible in damages for personal injuries sustained by a seaman through the negligent giving of an unauthorized signal by the master of the ship, whereby a sling load of sugar was allowed to prematurely descend into a boat without warning to the seaman, thus injuring him; where no allegation is made in the libel of neglect on the part of the owner of the vessel in the selection of a proper person as master of the ship, or of any other breach of positive personal duty from which the injury might have resulted.

IN ADMIRALTY.  EXCEPTIONS TO LIBEL.

*J. J. Dunne,* for libellant.

*Kinney, McClanahan & Bigelow,* for Wilder Steamship Company.

*Holmes & Stanley,* for Paauhau Sugar Plantation Company.

ESTEE, J.    This is a suit in admiralty in *personam* to recover the sum of ten thousand dollars for personal injuries alleged to have been sustained by the libellant while engaged in loading a cargo of sugar into the steamship "Helene," belonging to the defendant, Wilder Steamship Company.

The allegations of the libel are in substance as follows:

That the defendant, the Wilder Steamship Company, is a cor-

poration, organized under the laws of the Territory of Hawaii, and on the 20th day of March, 1903, said corporation was engaged as a common carrier in the transportation and delivery of merchandise in and upon the various steam vessels owned by it, and that among said steam vessels so owned by it was the steam vessel known and designated as "Helene." That the defendant on the said 20th day of March, 1903, and for some time prior thereto was employed as a seaman on board of the aforesaid steamship "Helene."

That the Paauhau Sugar Plantation Company is a corporation, organized under the laws of the state of California, and is doing business within the Territory of Hawaii under the laws thereof; and on the 20th day of March, 1903, was operating a sugar plantation and wharf as part thereof, at Paauhau, on the Island of Hawaii in said Territory; that the sugar produced on said plantation was shipped from said wharf and discharged from said wharf by the said sugar plantation company for transportation elsewhere, into vessels alongside of said wharf and afloat upon the navigable waters of the port or harbor of Paauhau, on the said Island of Hawaii in said territory.

That on the afternoon of March 20, 1903, the steam vessel "Helene" was anchored in the port of Paauhau, some distance away from said wharf, to receive from said Sugar Plantation company from said wharf, certain sugar to be transported elsewhere; that the said steam vessel was not made fast to or connected in any way with the said wharf; that the "Helene" had three large boats and one smaller one, which were intended and used to transport sugar from the shore or wharf to the vessel. That the master of the steam vessel "Helene" ordered the libellant to go with others in one of the larger boats to the wharf and procure from said wharf a cargo of sugar, transport the same to the steam vessel, and then discharge the same into the said steam vessel; that the libellant obeyed the order of said master and went with said boat and crew from the "Helene" to the wharf; that this boat was not at any time made fast to the wharf, but was kept in position by the use of the oars, the surface of the wharf being considerably elevated above the surface of the boat.

The process of the transferring of said sugar from the wharf to the boat, as shown by the allegations of the libel, was as follows:

"On said wharf there was a derrick, so constructed as to be capable of being swung out over the edge of said wharf so that sugar hoisted thereby would be suspended over the water; attached to the upper end of this derrick was a block and at its heel there was another block, and through these two blocks a wire fall was rove; at one end of this fall was attached a hook used to hoist the sling loads of sugar, while the other end of said fall led to the steam winch which was used to hoist the sugar to the end of the derrick, and thence to lower it into the boat."

It appears further that all of the appliances for the transferrence of the sugar were the appliances of the Paauhau Sugar Plantation Company, and that the libellant was not employed by the said sugar plantation company in any capacity and had nothing whatever to do with the operations of transferring the said sugar from the said wharf into the said boat; that all of the appliances, gear and machinery for the transferring of the sugar from the wharf to the boat were all upon the wharf of the sugar company, and that none of the same was made fast to the boat in any way; that said machinery, gear and appliances were all operated and managed by employes of the sugar plantation company and not by members of the crew or employes of the "Helene."

It appears further that "when a sling load of sugar was hoisted to the end of the said derrick, said derrick was then trimmed or swung out so that such sling load of sugar would be over the water; it then became the duty of the employe of said sugar plantation company who was in charge of said steam winch to lower said sling load of sugar part way down, and then hold it to await a signal from the crew in the boat; said signal would notify said winchman when to let said sling load of sugar descend into said boat; said winchman was not to drop said sling load of sugar into said boat until he received said signal; and in this behalf, the libellant further shows, that according to the established process of transferring sugar from said wharf to said boat, if said winchman should drop said sling load of sugar into said

boat without or before his reception of said signal, he would be violating his duty in the premises. Upon the proper giving and reception of said signal, but not otherwise, it was the duty of said winchman to drop said sugar into said boat."

It appears further from the libel that on March 20, 1903, the date of the alleged accident, the master of the steam vessel "Helene" was on said wharf at the place where the sugar was being transferred as described in the libel, and at the time of the injury complained of was not in the boat nor did he form any part of the crew thereof; that a sling load of sugar was hoisted to the end of the derrick and the said derrick was so trimmed that the sling load of sugar was suspended partly over the water and partly over the boat, and the crew in the boat were endeavoring to maneuver the boat so as to get it into proper position to receive the sling load of sugar.

That while this was being done by said crew, "but before said crew was ready to receive said sugar, and before any signal of any kind had been given from said boat to said winchman, and without any signal from said boat to said winchman, said master of said steam vessel, without receiving any signal from said boat, suddenly and without any warning or other notice to said crew in said boat and contrary to the aforesaid established method of transferring said sugar, called out to the said winchman to let go said sling load of sugar . . . ."

That the winchman did let go the sling load of sugar suddenly and without any warning or other notice to the crew in the boat, "and contrary to the established method of transferring the said sugar to said boat," and the said sling load of sugar, containing ten bags of sugar, each weighing 125 pounds, descended with great rapidity into the boat.

The libel alleges that the libellant endeavored to avoid the sling load of sugar, but was unable to do so owing to the transaction occurring so quickly; that the sling load of sugar knocked him against another sling load of sugar already in the boat and near the gunwale thereof, struck his left hand and jammed it against the gunwale and "tore and lacerated said hand to such an extent that it has ever since been useless to him."

It is further alleged in the libel' that the injuries were caused by the carelessness and negligence of both the defendants, and especially the carelessness and negligence of the master of the "Helene" in calling out to the winchman to let go the sling load of sugar before the said crew in the boat was ready to receive it, and "before any signal of any kind had been given from said boat to said winchman and without any signal from said boat to said winchman or to said master."

Further, that the accident was due to the carelessness and negligent action of the winchman in letting go the sling load of sugar before the crew in the boat was ready to receive the same and before any signal was given from the boat, and without any signal from said boat to said winchman.

That there was concurring negligence on the part of both defendants in setting in motion carelessly and negligently, the machinery, appliances and gear by which the sling load of sugar was permitted and allowed to descend upon the libellant and injure him as alleged.

That the libellant was confined to the Queen's Hospital, in Honolulu, by reason of this injury, from March 21, 1903, to March 31, 1903, and although discharged from said hospital, the lacerations in the hand are not yet healed, and said libellant is not able to use said hand and since the 20th day of March, 1903, has been totally disabled and his earning capacity destroyed, and that he does not know when, "if at all, his former earning capacity will be restored." That he suffered great mental anguish and physical suffering from the fear that he would lose his hand and thus become unable to earn his livelihood in his profession. The libel further shows the earning capacity of the libellant, as seaman on board of the "Helene" at the time of the alleged accident, to have been seven and 50-100 dollars per week, and that he then was, and for a long time prior thereto had been, in perfect health, enjoying the free use of his limbs.

Damages for all of which is asked for in the sum of $10,000, together with the amount of wages lost to the libellant by reason of said injury.

Certain exceptions were filed to this libel by the defendant, the Wilder Steamship Company, which makes it necessary to consider whether the allegations of fact set up in the said libel are such as to render the said Wilder Steamship Company liable in this action.

The exceptions are as follows: 1. That the libel sets forth no cause of action against said defendant. 2. That at the time of the alleged injury to the libellant, the master of the "Helene" was not acting within the scope of his employment. 3. That at the time of the alleged injury, the master of the "Helene" was a fellow servant of the libellant in the transaction and work being done. 4. That the alleged negligence of the master of the "Helene" was not the proximate or legal cause of the alleged injury of the libellant. For all of which reasons the Wilder Steamship Company claims it should not be held responsible.

It must be admitted that any one of these exceptions, if well taken, would result in relieving the respondent, the Wilder Steamship Company, of liability. Very able and voluminous briefs have been filed by both counsel for libellant and respondent, covering all of the points raised, but I do not deem it necessary to go further than a consideration of one of them, namely, whether the captain of the "Helene" was a fellow servant of the libellant under the circumstances as set forth in the libel herein.

For the purposes of these exceptions, the allegations of the libel are taken as true.

The negligence for which it is sought to hold the respondent, the Wilder Steamship Company, is the alleged negligence of the captain of the "Helene" in giving an order to the man in charge of the winch on the wharf at Paauhau (an employe of the Paauhau Plantation Company), contrary to the method theretofore established, as alleged in the libel. The allegation being that said method was for the men in the boat when they were ready to receive the sugar, to give the signal, after the sling load of sugar had been suspended over the boat; but that the captain of the "Helene" practically altered this method without any

warning to the men in the boat, by calling out suddenly to the winchman on the wharf to let go the sugar, while he, the captain, was standing on the wharf; and that this was done before the men in the boat were ready to receive the same, and the order being obeyed by the winchman, the injury resulted to libellant.

It is clear from the allegations of the libel, that the libellant and captain of the steamship "Helene" were both employes of the Wilder Steamship Company and engaged in a common employment, that of navigating the ship "Helene," and as a matter of the ordinary business of the ship as a common carrier, loading and unloading her cargo.

Assuming that the accident was due to the negligence of the captain of the "Helene," it does not follow from the circumstances as shown by all the averments of the libel, that the responsibility for said negligence lay with the Wilder Steamship Company, in the absence of any averment showing neglect of positive duty on the part of the owner of the ship, the Wilder Steamship Company.

The positive duty of a master to a servant has been very concisely stated in the case of *Atchison, Topeka & C. Co. v. Moore,* 29 Kas. 632, 644, quoted approvingly in *B. & O. Railroad v. Baugh,* 149 U. S. 368, 387, as follows:

"A master assumes the duty towards his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools and implements to work with, with reasonably safe materials to work upon, and with suitable and competent fellow servants to work with him; and when the master has properly discharged these duties, then, at common law, the servant assumes all the risks and hazards incident to or attendant upon the exercise of the particular employment, or the performance of the particular work, including those risks and hazards resulting from the possible negligence and carelessness of his fellow servants and co-employes."

There is nothing upon the face of the bill to show that the master of libellant and the captain of the ship, (the Wilder

Steamship Company) had been derelict in any of these positive duties.

The negligence complained of, namely, the giving of the unauthorized and unusual order by the captain, who, it is claimed by libellant, acted as the vice principal of the Wilder Steamship Company, was the negligence of a fellow servant of the libellant, under the rules of law laid down by the recent decisions of the Supreme Court of the United States and by the Circuit Court of Appeals of the Ninth Circuit.

See *Baltimore & Ohio Railroad v. Baugh*, 149 U. S. 368, where the Court says, (quoting from page 384):

"*Prima facie*, all who enter into the employment of a single master are engaged in a common service and are fellow servants, and some other line of demarkation than that of control must exist to destroy the relation of fellow servants. All enter into the service of the same master to further his interests in the one enterprise; each knows, when entering into that service, that there is some risk of injury through the negligence of other employes, and that risk which he knows exists, he assumes in entering into the employment."

*New England Railroad Co. v. Conroy*, 175 U. S. 323; *Olson v. Oregon Coal & Navigation Co.*, 96 Fed. 109; *Olson v. Oregon Coal & Navigation Co.*, (C. C. A.), 104 Fed. 574.

See also *Quinn v. New Jersey Lighterage Co.*, 23 Fed. 363. In that case, the libellant was injured by the act of the captain of the ship in prematurely setting in motion a winch; and the owners were relieved from all liability on the ground that the act performed by the captain was an act that any other co-servant might have performed, and that the doctrine of non-liability for negligence of fellow servants applied.

However, the controlling case in the mind of the Court, and the rules laid down in which, so far as these exceptions are concerned, this Court is constrained to follow, is the case of *Olson v. Oregon Coal & Navigation Co.*, originally decided by Judge De Haven of the District Court, and reported in 96 Fed. 109, and affirmed by the Circuit Court of Appeals of the Ninth Circuit, and reported in 104 Fed. 674.

There the doctrine of the non-liability of the master for the injury of one fellow servant by the act of another, was squarely applied, when, as in that case, such injury was received by a seaman on board a ship and the negligence which caused the injury is assumed to be that of the master of the ship. The Court there saying (96 Fed. P. 111):

"While it is true the master of a ship is a servant of higher grade than that of a seaman, and represents the owner in respect to the personal duties and obligations which the latter owes to the seaman, still in all matters pertaining to the navigation of the ship the master and seaman are fellow servants, engaged in one common employment, and each assumes the risk of the other's negligence in the discharge of the duties incident to such common employment."

In the same case on appeal, where the decision of Judge De Haven was affirmed, the Circuit Court of Appeals quotes from the case of *New England Railroad Co. v. Conroy*, 175 U. S. 323, on the general doctrine of the non-liability of the master for the negligence of one fellow servant, resulting in the injury of another fellow servant, and also adopts as the law of the case the language of Judge Brown of the Southern District of New York, in the case of the *City of Alexandria*, reported in 17 Fed. 390, where that learned judge says, (P. 392):

"The navigation of a ship from one port to another constitutes one common undertaking or employment, for which all the ship's company, in their several stations, are alike employed. Each is in some way essential to the other in the furtherance of the common object, *viz.*, the prosecution of the voyage."

And I might add further, quoting from the same judge: "Each one, therefore, upon the principles laid down in the common law courts, takes the risk of any negligence in the performance of his duties by any of his associates in the common employment."

Under the allegations of this bill, the libellant and the captain of the steamship "Helene" were engaged in a common employment, both in navigating the said steamship "Helene" and in loading and unloading her cargo, and the negligence of the said

captain, as alleged, was that of a fellow servant of the libellant, for which the defendant, Wilder Steamship Company, cannot be held responsible. The exceptions are sustained, and the bill as to the Wilder Steamship Co. is dismissed.