## SIEVERS v. EYRE.

(District Court, S. D. New York. May 20, 1903.)

1. INJURY TO SERVANT—RISKS ASSUMED.

One of the men employed on a yacht loaded a cannon on it and fired a salute. The captain then put another cartridge into the cannon, and left it loaded. The next morning a seaman in the regular course of his duty, and not knowing that the gun was loaded, proceeded to clean it. While doing so he pulled the spring near the breech, which fired the gun, and was injured. *Held*, that the risk was assumed.

2. SAME—FELLOW SERVANTS.

The captain, in leaving the gun loaded, was a fellow servant of the seaman, and the owner was not liable for his negligence.

3. SAME—EMPLOYERS' LIABILITY ACTS—DUE CARE OF SERVANT.

The employers' liability acts of both New York and Massachusetts only apply where the employé "is himself in the exercise of due care and diligence at the time."

4. SAME—CONTRIBUTORY NEGLIGENCE.

The seaman was guilty of contributory negligence in not ascertaining whether the gun was loaded.

In Admiralty.

¶ 1. Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

¶ 2. Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Canadian Pac. Ry. Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

Finch & Coleman, for libelant.
Convers & Kirlin, for respondent.

HOLT, District Judge. This is an action to recover damages for personal injuries. The respondent, Eyre, in the summer of 1902, chartered the yacht Viva. The libelant, Sievers, shipped as seaman on board the Viva on July 31, 1902, and served until August 9, 1902, the date of the accident. It was part of Sievers' duty to clean the brasswork about a part of the yacht, and, among other things, a brass cannon, used for firing salutes. He also, as a part of his duty, frequently fired salutes with this cannon. Shortly after he was employed, the yacht went on a cruise with the yacht club, and on the evening before August 9th was lying in the harbor of Marblehead, Mass. The commodore's boat came into the harbor, and a salute was to be fired on the Viva. Benson, one of the men, went into the cabin and got a cartridge, and the captain at the same time went into the cabin and got another cartridge. Benson put his cartridge in the gun, and fired it, and then the captain placed the other cartridge, which he had brought out, in the gun, and left the gun loaded. The next morning Sievers, in the regular course of his duty, proceeded to clean the gun. He drew it back on deck, and tipped the muzzle down toward the deck, steadying the gun with his foot under the muzzle, and proceeded to polish the brasswork of the cannon with waste. While doing so, he pulled the spring near the breech, which fired the gun. The charge shattered his foot, so that it became necessary to amputate his leg between the ankle and the knee. He did not know that the gun was loaded, but could easily have ascertained it by opening the breech before starting to clean the gun.

The libelant has suffered a pitiable injury, but I do not see that the respondent is legally responsible for it. The libelant's counsel claims that the respondent is liable, under the rule that requires a master to furnish a safe place and appliances for a servant to work; but the gun and its appliances were in perfect condition, and the danger of being injured by it was a danger which was inherent in the use of all guns. The libelant, by engaging to render service on the yacht, assumed this danger, as well as all other dangers which were inherent in the service. The libelant's counsel claims that it is the custom generally on all vessels, and was the custom on the Viva, never to have the gun loaded until immediately before it was fired. The evidence, in my opinion, does not clearly establish this fact. Undoubtedly, such a gun is usually not kept loaded; but probably at certain times, when salutes are being fired frequently, and sometimes on very short notice, it is occasionally loaded in advance. The firing of salutes on yachts may seem a useless and childish practice, and occasionally causes serious injury, but it is the universal practice of yachts to have and use such guns, and the libelant was entirely familiar with such practice, and accustomed to such use. But if it be assumed that there was negligence in leaving the cartridge in the gun over night, it was the negligence either of Benson or of Ericson, the captain of the yacht, both of whom, in this respect, I think, are to be re-

garded as fellow servants of the libelant. The captain of a vessel is undoubtedly, for many purposes, not regarded as a fellow servant with the men, but in what he did in this matter he was discharging an ordinary duty of a seaman in the navigation or management of the yacht, and is, in my opinion, to be regarded simply as a fellow servant, for whose negligence the owner is not liable. Olsen v. Oregon, etc., Co. (D. C.) 96 Fed. 109; Hughes on Adm. § 101, and cases cited.

The libelant's counsel claims that this case is governed by the provisions of the employers' liability act either of New York or Massachusetts. It is a question of some doubt whether either of these statutes can be properly considered in this case. The accident occurred at Marblehead, Mass. The Massachusetts act is not in evidence. The New York act could not have any application to an accident occurring on a vessel in Massachusetts, except on the theory that the vessel was registered or had her home port in New York; but I do not recall any evidence as to where the home port of the Viva was. I have, however, examined the statutes both of New York and Massachusetts. The New York act (Laws 1902, p. 1748, c. 600) was based on the Massachusetts act (Laws 1887, p. 899, c. 270), although differing from it in various respects. Both acts only apply when an employé "is himself in the exercise of due care and diligence at the time." In my opinion, Sievers was not exercising due care and diligence at the time. He was entirely familiar with the mechanism of this gun. The breech could have been opened by a single movement, in a second, and, if opened, it would have shown that the gun was loaded. In my opinion, any man that works about a gun, having it in a position in which, if discharged, it will injure him, is negligent if he does so without first ascertaining whether it is loaded. Undoubtedly, the fact that Sievers was guilty of contributory negligence would not completely bar a recovery under the general rule in admiralty, but would only lead to a division of damages (The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29, 34 L. Ed. 586); but, in my opinion, if the claim is based on either of the employers' liability acts of New York or Massachusetts, any contributory negligence bars a right of recovery.

The libel should be dismissed, without costs.