## JOHNSON v. THE STEAMSHIP ZELANDIA.

(Second Division. Nome. December 20, 1909.)

1. SHIPPING (§ 84*)—INJURIES TO STEVEDORE—NEGLIGENCE.

Libelant was injured while engaged in loading a sling in the hold of the vessel. The vessel furnished a rope sling, whereas the evidence showed that a net sling was the customary and usual appliance for that work. The rope sling was loaded. The libelant gave notice to hoist slowly to the third mate, who repeated it to the watchman on deck. The winchman put on full steam and hoisted the load suddenly. It struck the hatch and threw a box out of the load, which fell upon libelant and hurt his foot and leg without any fault on his part. *Held* that, notwithstanding the damage occurred by the carelessness of the winchman, the ship was liable for negligence in not furnishing a net sling, the usual and necessary appliance for that class of work at that place.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 349–351; Dec. Dig. § 84.*]

2. MASTER AND SERVANT (§ 201*)—INJURIES TO SERVANT—FELLOW SERVANTS—NEGLIGENCE.

Negligence of a servant does not excuse the master from liability to a coservant for an injury which would not have happened had the master performed his duty. Contributory negligence of a fellow servant does not preclude recovery for an in-

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

jury to an employé of which the proximate cause was the failure of the employer to furnish a suitable appliance.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*]

Action in rem to recover damages for personal injuries received by libelant while at work as stevedore on said vessel in unloading cargo from the hold under a hatchway.

This case was tried before the court on oral testimony of witnesses produced before the court and upon depositions.

The evidence, in the opinion of the court, establishes substantially all of the libelant's material allegations, but does not support his allegation that the libelant was an employé of the John J. Sesnon Company. On the contrary, I find that he was hired by the charterers and was in their employ when he was hurt on board the vessel.

Geo. D. Schofield, for libelant.

Ira D. Orton, for respondents.

MOORE, District Judge. A main question under the issue here rises.

Is the libelant or any of his fellow servants convicted by the evidence of negligence in anything done by him or them while loading or hoisting the sling which caused or contributed to cause the libelant's injuries?

There is an entire absence of evidence in support of respondent's charge of negligence against libelant, and tending to show that libelant, or his fellow longshoremen, committed or omitted any act suggestive of negligence in the manner of their work in the hold. The libelant, as the evidence shows, entered on his employment to assist in discharging freight from the hold under the forward hatch of the vessel, and, having helped to load the second rope sling, gave to the third mate the signal to hoist carefully, who in turn signaled to the top deck for the winch-

man to begin to hoist. The winchman, on receipt of the signal, applied to the winch a full head of steam, by the force of which the loaded sling was jerked upward so quickly that it was hurled against the undercoaming at the top of the hatch, suddenly emptying a box from the load down on the libelant's foot and ankle. The load was snatched up so suddenly and forcibly that the libelant was not given time to steady the load, or to step aside to save himself from injury, and he was only saved from greater injury by O. M. Halverson, a fellow workman, who grabbed libelant by the shoulders and pulled his body out of the way of the sling; but, owing to the very narrow room then opened in the cargo, his feet projected inside the hatchway. While, therefore, respondents fail to make good the charge that the colaborers of libelant in the hold were negligent, yet that the winchman, a fellow servant of the libelant, was guilty of carelessness and negligence, is fully proved by a fair preponderance of the evidence.

2. It is also clear from the testimony that, out of regard for the safety of the stevedores engaged in breaking down cargo in the hold and loading and hoisting the slings, a net sling was the proper and customary kind of sling used on vessels for hoisting a cargo of general merchandise, composed in part of small boxes and packages; whereas, the rope sling is customarily employed at Nome—and generally elsewhere—to handle large boxes and machinery. It follows from these facts, added to the further evidence of the mate's refusal to send ashore for a net sling, that the ship was reckless of the welfare of the libelant and of the charterer's other employés hired to discharge the cargo.

In sending the ship on her voyage unprovided with a net sling, proved to be the usual and customary sling for hoisting from vessels a cargo of general merchandise composed of boxes of the sizes below the size of the largest boxes and ma-

chinery, the ship was negligent of the duty imposed on it by law.

Among the positive and nonassignable duties of the owners of a vessel to those in its service aboard their ships is the duty of providing necessary appliances for the seamen's safety and for the use of the ship.   Olsen v. Oregon Coal & Navigation Co. (D. C.) 96 Fed. 109; Id., 104 Fed. 574, 44 C. C. A. 51.

The breach of this duty constitutes negligence, and is a tort for which the ship may become liable according to circumstances.   Hughes on Admiralty Law, p. 184.

In the case under consideration there is presented to us negligence resulting from the breach by the owner of a ship of a positive duty growing out of the relation of the ship or its owners, to its employés aboard the ship.

3. The other form of negligence is that of a servant of the ship, resulting in injury to a fellow servant.

That the winchman's negligence was a proximate cause of the libelant's injuries is a proposition hardly open to question. His duty, when ordered to hoist, was to slowly turn on the steam, and gradually to increase the volume of steam bearing on the winch.   This duty rested on him, whatever was the kind or character of the sling used on the occasion, and the very construction of a rope sling made it obviously inferior to a net sling for the safe carriage of the smaller boxes and packages of merchandise, and rendered his duty to exercise at least an ordinary degree of care at the time of the casualty to the libelant the more imperative.   But the evidence shows that the first impulse given to the sling was so sudden and so violent that the libelant had no time to steady the load and to step aside from his position below the hatch to escape the falling boxes.   Here, then, was negligence, the natural and probable result of which was easy to be foreseen by the winchman, and not difficult to be prevented, and it is against reason to conclude

that such negligence was other than the main efficient cause of libelant's wounds.

4. If the culpable and negligent act of the winchman in suddenly applying so great force of steam had been the sole and independent cause of the injuries, the defense of negligence of a fellow servant pleaded by the respondents would have been fully and completely established. But the negligence of the owners and charterers, consisting in failure to provide a net sling, is an important element for consideration in connection with the winchman's negligent act in determining the ship's liability in this action. According to the ordinary course of events, the natural consequence of using a rope sling in hoisting and discharging cargo from a ship through a hatchway, which any prudent person could foresee, is the jarring of the sling and contents by a sudden jerk of the lines from the winch or a shifting of the load by a collision with the undercoaming of the hatchway. The great burden of the evidence is that if a net sling had been used, instead of the rope sling, the libelant would have been unhurt, notwithstanding the negligence of the winchman. The evidence further makes clear that the natural and probable consequence of the use of a rope sling under the circumstances revealed by the evidence is that a sling load, built up of smaller articles of freight, would sometimes strike the hatch, and the contents be thrown out of plumb into a confused heap, and then emptied down the hatchway. The consequence which was to be foreseen actually occurred. Because the owners and charterers used no effort to avert this consequence, the ship must be held responsible therefor to the person injured through their breach of duty, although another cause combined with their negligence to produce the injuries. The negligence of the winchman will not absolve the ship of the liability from the owners' and charterers' own negligence.

"So long as it affirmatively appears that the mischief is attributable to the first act of several of negligence as a result which might

reasonably have been foreseen as probable, the legal liability continues." McDonald v. Snelling, 14 Allen (Mass.) 292, 92 Am. Dec. 768.

"It is not necessary to the liability of a wrongdoer that the result which actually follows should have been anticipated by him." Mann Boudoir Car Co. v. Dupre, 54 Fed. 646, 4 C. C. A. 540, 21 L. R. A. 289; The Normannia (D. C.) 62 Fed. 469.

"It is the general character of the act, and not the particular result, that the law primarily regards in this connection." Elliott, J., in Louisville, etc., R. Co. v. Wood, 113 Ind. 544, 14 N. E. 572, 16 N. E. 197. Am. & Eng. Ency. Law, vol. 8, pp. 602, 603.

These citations of principles applied to the facts leading to the injury have a tendency to show that a negligent wrongdoer, whose negligence is the earlier of two causes contributing to a personal injury, must respond in damages for his wrongdoing, although the later cause may be the more immediate and direct cause of the injury. There are other authorities, however, which have a yet closer bearing on the facts of the present case.

Upon the legal effect of concurrent causes of a personal injury, Labatt in his Commentaries on the Law of Master and Servant, vol. 2, pp. 2246, 2247, § 813, says

"Where several causes concur to produce certain results, any of them may be termed proximate, provided it appears to have been an efficient cause. The general rule applicable to all cases illustrating this situation, except those in which the contributory negligence of the servant himself is involved, is that, in order to establish the right of action, it is merely necessary to show that one of the co-operating causes of the injury was a culpable act or omission for which the master was responsible. This rule holds good, whether the other causes were defaults for which he was responsible, or were due to some event or some conditions for which he was not required to answer."

In support of this doctrine are cited these cases: Pullman Palace Car Co. v. Laack (1892) 143 Ill. 245, 32 N. E. 285, 18 L. R. A. 215, wherein the court said in substance:

If the injury is the result of the negligence of the defendant

and of a third person, or if an inevitable accident or an inanimate thing has contributed with the negligence of the defendant, the plaintiff may recover, if the negligence of the defendant was an efficient cause of the injury.

The doctrine above laid down is adopted in The Joseph B. Thomas (D. C. 1897) 81 Fed. 578.

So in Grand Trunk R. Co. v. Cummings (1882) 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266, similar doctrine is expressed as follows:

> "If the negligence of the company contributed to, it must necessarily have been an immediate cause of, the accident, and it is no defense that another was likewise guilty of wrong."

See St. Louis, I. M. & S. R. R. Co. v. Needham (1895) 16 C. C. A. 457, 69 Fed. 823, 32 U. S. App. 635. See, also, applications of the above doctrine in Scandell v. Columbia Constr. Co. (1900) 50 App. Div. 512, 64 N. Y. Supp. 232; Murtaugh v. New York C. & H. R. R. Co. (1888) 49 Hun, 456, 3 N. Y. Supp. 483; Galveston, H. & S. A. R. Co. v. Pitts (1897, Tex. Civ. App.) 42 S. W. 255; Wright v. Southern R. Co. (1898) 122 N. C. 959, 30 S. E. 348; Town v. Michigan C. R. Co. (1890) 84 Mich. 214, 47 N. W. 665.

These cases are decisive precedents upon the law and facts of this case, and lead to the inference that libelant should recover.

5. There remains but one main question for consideration, namely: Will the doctrine of fellow servant defeat a recovery in the action? Labatt, in section 814 of his Commentaries, affirms that:

> "It is not barred by the defense of common employment, where a breach of duty on the master's part contributed as a proximate cause to the injury."

In support of the accuracy of this rule of law the author quotes many authorities in the footnotes. Of these but a few will now be cited:

"Negligence of a servant does not excuse the master from liability to a coservant for an injury which would not have happened had the master performed his duty." Coppins v. New York C. & H. R. R. Co. (1890) 122 N. Y. 557, 25 N. E. 915, 19 Am. St. Rep. 523, affirming (1888) 48 Hun, 292.

"Contributory negligence of a fellow servant does not preclude recovery for an injury to an employé of which the proximate cause was the failure of the employer to furnish a suitable appliance." Atchison, T. & S. F. R. Co. v. Lannigan (1895) 56 Kan. 109, 42 Pac. 343.

"Where the negligence of the master is an efficient cause of the servant's injury, it is not material how many others are in fault." McMahon v. Davidson (1867) 12 Minn. 357 (Gil. 232).

By these several lines of authorities I am brought to the conclusion that, for the concurrent negligence of the owners and charterers and of their servant, the winchman, the libelant should recover such damages as the law will award him by way of compensation for his injurie.

6. Coming to the consideration of the amount of damages to which the libelant is entitled, I note that the sum of $200 for board, nurses, attendance, and medicines at the hospital has been paid, and that this sum covers the entire bill for said items.

That amount having been paid, the libelant cannot recover for the items of the bill. This bill was paid by the John J. Sesnon Company, but under the evidence it is proper to presume that the charterers were the payers.

This presumption is corroborated by the admission of the respondents in their answer to the first amended libel, wherein it is alleged that the steamship, through her officers and agents, agreed to pay to the hospital the expenses incurred by libelant for medicines, medical attendance, nursing, board, and lodging.

The evidence touching the value of libelant's lost time resulting from his wounds is that as late as January 1, 1906, he was still unable to perform longshoreman's work.

Three witnesses testified to what they each earned at long-shoremen's work during the season of open navigation at

Nome in the year 1905. The receipts of the one who received
the most for his services were between $1,500 and $1,600;
while the earnings of the one who received least for his work
was between $1,200 and $1,300.

It is shown by the evidence of one witness that all longshore-
men willing to work in the summer and autumn of 1905 were
not so steadily employed as were the three who tell of the
amount of their earnings. It would be unfair to the claimants
to conclude that the libelant would have earned as much as
that one whose total earnings were the lowest, especially as
we have no basis for believing that Johnson would have been
in the preferred class to which the three longshoremen testify-
ing belonged.

In the absence of testimony on behalf of the libelant as to
this matter, I conclude that he was in a class below these three,
and I therefore draw the conclusion that libelant as longshore-
man would not have earned above $1,000 during the working
season of 1905.

From this amount $150 earned by libelant at other work
should be deducted, leaving $850 as the amount of damages
for loss of time.

The wounds of the libelant, aside from the fracture of his
ankle, were severe. The injury to the bone of the leg was at-
tended with laceration of the tendons and ligaments of the foot
and ankle, and caused him much suffering and pain.

The surgeon who attended the libelant says in his testimony
that at times, even up to the date of his testifying in Novem-
ber, 1908, the libelant would experience pain in the ankle.

Upon a careful review of the testimony as to the nature and
character of the injuries, I have decided that less than $500
would be no adequate compensation to libelant for the pain,
both of body and mind, that he must necessarily have suffered
while the processes of repair were going on about the wound.

The libelant is also entitled, I think, to some compensation

for the permanent impairment of the strength of his ankle, and assess the damages therefor at $900.

The following is a summary of the damages now awarded to the libelant:

For loss of time........................................ $  850 00
For surgeons for reducing fracture and attendance—
    To Dr. Sloan.............................. $250 00
    To Dr. Hill.................................   50 00
                                              ————————   300 00
For pain, physical and mental...........................   500 00
For permanent impairment of the strength of the ankle..   900 00
                                                         —————————
    Total  ............................................ $2,550 00